DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
MICHAEL T. BURKE
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | CONSPIRACY TO IMPORT |
| vs. | ) | CONTROLLED SUBSTANCES |
| | ) | Vio. 21 U.S.C. §§ 963, 952 & |
| THOMAS P. RANES, | ) | 960(a) & (b)(1), (b)(3) |
| NOPENON DENNIS SHINE, | ) | |
| DYLAN N. BALES, | ) | COUNT 2: |
| CURTIS H. MCDONALD, | ) | CONSPIRACY IN RELATION TO |
| KEVIN A. BROWNING, and | ) | MARIJUANA TRAFFICKING |
| ROBERT H. MCDONALD, | ) | Vio. 21 U.S.C. §§ 846, 841(a)(1) |
| | ) | & (b)(1)(A) |
| Defendants. | ) | |
| | ) | COUNTS 3 - 136: |
| | ) | MONEY LAUNDERING |
| | ) | Vio. 18 U.S.C. §§ |
| | ) | 1956(a)(1)(A)(i), (a)(1)(B)(i), |
| | ) | (a)(1)(B)(ii) and 2 |

)   COUNTS 137 - 140:
)   INTERNATIONAL MONEY
)   LAUNDERING
)     Vio. 18 U.S.C. §§
)   1956(a)(2)(B)(i) and 2
)
)   COUNT 141:
)   DRUG FORFEITURE -
)     21 U.S.C. §§ 853(a)(1) & (a)(2)
)
)   COUNT 142:
)   MONEY LAUNDERING
)   FORFEITURE
)     18 U.S.C. § 982(a)(1)
)

## I N D I C T M E N T

The Grand Jury charges that:

### COUNT 1

1.     Beginning at some exact time unknown but at least on or about May 21, 2000, and continuing until at least on or about April 19, 2006, both dates being approximate and inclusive, in the District of Alaska and elsewhere, the defendants THOMAS P. RANES, NOPENON DENNIS SHINE, DYLAN N. BALES, CURTIS H. MCDONALD, KEVIN A. BROWNING, and ROBERT H. MCDONALD, together with other co-conspirators, both known and unknown to the grand jury (the "conspirators"), within the District of Alaska and elsewhere, did unlawfully and knowingly, combine, conspire, confederate, and agree with each other to import 1000 kilograms or more of marijuana, as well as 3,4 Methylenedioxymethamphetamine ("MDMA" or "ecstasy") into

the United States from Canada, in violation of Title 21, United States Code, Sections 952

and 960 (a), (b)(1).

<u>METHOD AND MEANS OF THE CONSPIRACY</u>

2.    It was part of the conspiracy for the conspirators to import controlled

substances, primarily marijuana, from Canada into the Anchorage, Alaska area. The

conspirators would arrange for the shipment of approximately 200 to 500 pounds of

marijuana, or "BC Bud", from Canada, roughly every six weeks, to pay for the shipments,

often concealing the cash in the same secret compartments used to transport the marijuana,

or in spare tires of vehicles. The conspirators would also import MDMA, or ecstasy, from

Canada.

3.    It was part of the conspiracy for THOMAS P. RANES to organize and

coordinate the shipments of marijuana. RANES assumed primary responsibility for this

activity after another co-conspirator was reported missing. RANES would organize and

coordinate shipments by using prepaid cellular telephones to speak with his sources of

supply in Canada. RANES and other conspirators would disguise the proceeds of the

conspiracy by using RANES's welding and automotive repair business, Ranes & Shine,

LLC, as well as RANES's other businesses. The conspirators would use Ranes & Shine,

LLC's assets, including its equipment and bank accounts, to facilitate the conspiracy as

well as to launder the proceeds of the conspiracy.

4.    It was part of the conspiracy for RANES, NOPENON DENNIS SHINE, and

DYLAN N. BALES, as well as others, to assist in removing and dividing the

marijuana once the shipment arrived in Alaska, where it was sold by the conspirators. RANES would sometimes receive both personal and business assets in exchange for marijuana.

5.      It was part of the conspiracy for CURTIS H MCDONALD, KEVIN A. BROWNING, and ROBERT H. MCDONALD, as well as others, to drive vehicles used to transport marijuana and money to and from Canada.

6.      It was part of the conspiracy for the conspirators to conduct financial transactions to disguise the source of the proceeds of the conspiracy as well as to evade detection by law enforcement.

7.      During the period of the conspiracy, the conspiracy generated over $10 million in gross drug proceeds.  The proceeds of the conspiracy were used to pay for future shipments of marijuana from Canada, to invest in real estate in Alaska and in the Ukraine, as well as to purchase and maintain high-priced assets and other equipment, including but not limited to the assets set forth herein.

OVERT ACTS

8.      In furtherance of the conspiracy, and to effect the objects thereof, the defendants, together with other persons known and unknown to the Grand Jury, performed and caused to be performed certain overt acts in the District of Alaska and elsewhere, including, but not limited to the following:

OA1.  On or about May 21, 2000, RANES possessed a quantity of marijuana packaged for sale.

OA2.  In or about September 2002, RANES's business, RANES & SHINE, LLC manufactured a hidden compartment in a fuel tank.  RANES loaded this tank into a van driven by the conspirator who was later reported missing, in order to assist in the importation of marijuana from Canada.

OA3.  On or about December 2, 2003, a conspirator attempted to drive approximately 115 pounds of marijuana and 101 MDMA, or ecstasy, pills, concealed in a hidden compartment in a fuel tank, into the United States from Canada.

OA4.  On or about October 26, 2004, an employee of Ranes & Shine, LLC deposited money that smelled of marijuana into Ranes & Shine, LLC's Northrim Bank account.

OA5.  Between October 20, 2004, and November 16, 2004, four international wire transfers were made from the Ranes & Shine, LLC Northrim Bank account to Marine Transport Bank in Odessa, Ukraine, totaling $187,000 in drug proceeds.

OA6.  In or about late November, 2004, a conspirator drove a 2004 Ford F350 Pickup Truck, licence #ESS267, hauling a snow machine trailer in which approximately 300 pounds of marijuana was concealed, into the United States from Canada.

OA7.  On or about March 11, 2005, $9,344.91 cash in drug proceeds was deposited into Ranes & Shine, LLC's Northrim Bank account.  Of this deposit, $9,000 appeared to have been run through a washing machine, in that it had the smell of laundry detergent and a wrinkled appearance.

OA8.  On or about May 20, 2005, BALES opened a bank account at Northrim Bank with $9,450 cash that smelled like marijuana.  BALES withdrew $9,400 that same day by cashier's check made out to Ranes & Shine, LLC.

OA9.  On or about May 27, 2005, a conspirator attempted to drive approximately 225 pounds of marijuana and one ounce of ecstasy (MDMA) into the United States from Canada.

OA10.  On or about June 1, 2005, a conspirator who was later reported missing possessed a quantity of marijuana packaged for sale, along with drug packaging materials, and approximately $11,000.

OA11.  On or about June 25, 2005, BALES deposited $9,000 cash in drug proceeds into his bank account at Northrim Bank, and then issued a check to Ranes & Shine, LLC, for $9,000.

OA12.  On or about July 22, 2005, BROWNING opened a bank account at Northrim Bank with $28,500 cash in drug proceeds.  He immediately converted $28,300 of this money into a cashier's check payable to Ranes & Shine welding.

OA13.  On or about July 27, 2005, BROWNING brought $120,000 cash in drug proceeds into Northrim Bank and purchased two cashier's checks made out to Ranes & Shine, in the amounts of $52,000 and 68,000.

OA14.  On or about August 4, 2005, BALES deposited $7,500 cash in drug proceeds into his bank account at Northrim Bank, which was withdrawn by check the same day at a different Northrim Bank branch.

OA15.  On or about January 20, 2006, CURTIS H. MCDONALD, driving a 2005 Ford F250 Pickup Truck, license #EVG533, hauling a 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, departed Alaska bound for Canada to pick up a marijuana shipment.

OA16.  On or about February 1, 2006, CURTIS H. MCDONALD, driving a 2005 Ford F250 Pickup Truck, license #EVG533, hauling a 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, containing approximately 400 pounds of Canadian marijuana in a hidden compartment, crossed the border from Canada into Alaska. CURTIS H. MCDONALD claimed he was coming from Skagway, Alaska, after delivering parts for a government project.

OA17.  On or about February 2, 2006, CURTIS H. MCDONALD drove the vehicle hauling the marijuana to a warehouse located at 1601 E. 84th Ave., and then to Ranes & Shine, LLC's parking lot, where he was met by RANES and BALES.

OA18.  On or about February 2, 2006, BROWNING entered 1601 E. 84th Ave., unit 5.  SHINE brought various tools, including a sledgehammer and cordless drill, inside 1601 E. 84th Ave., unit 5, to help unload the marijuana.

OA19.  On February 2, 2006, at approximately 7:42 pm, RANES drove the trailer containing marijuana to 1601 E. 84th Ave., where he backed the trailer into unit 5, detached the trailer.  The garage door to unit 5 was then closed.

OA20.  On February 2, 2006, at approximately 10:12 pm, RANES, SHINE, and BALES unloaded numerous boxes containing approximately 400 pounds of marijuana

from the unit. Three boxes were loaded into BALES's vehicle, a 2005 Chevrolet K2500HD Silverado, 4-Door Extended Cab Pickup Truck, licence #ESG274, and approximately 20 - 22 boxes were loaded into a snow machine trailer2005 Triton Enclosed snow machine trailer, license #3809SH, which RANES retrieved from Ranes & Shine, LLC's parking lot. BALES drove away in his vehicle, while RANES towed away the snow machine trailer with MCDONALD's vehicle. SHINE followed RANES in a 2004 Ford F350 Crew Cab Dually Pickup Truck, license #EYC813. RANES towed the snow machine trailer to his house located at 14033 Pickett Street, Anchorage, AK 99516.

OA21. On February 13, 2006, $8,100 cash that smelled of marijuana was deposited into the Ranes & Shine, LLC's First National Bank Alaska account.

OA22. On or about February 23, 2006, SHINE drove to Canada in a 2004 Ford F350 Crew Cab Dually Pickup Truck, license # EYC813, with approximately $500,000 cash to provide partial payment for a marijuana shipment.

OA23. On February 26, 2006, RANES took commercial airline flights to Vancouver, British Columbia to meet with individuals involved in his marijuana smuggling operation.

OA24. Between March 6 and 10, 2005, BROWNING installed a hitch on his vehicle designed to haul a fifth wheel flatbed trailer.

OA25. On March 13, 2006, ROBERT H. MCDONALD attempted to drive to Canada to deliver approximately $400,000 as partial payment for the next shipment of marijuana.

Page 8 of 24

OA26.  On or about March 14, 2006, CURTIS H. MCDONALD crossed the border into Canada driving a 2005 Ford F250 Pickup Truck, license #EVG533, to drop off approximately $400,000 as partial payment for the next shipment of marijuana.

OA27.  On or about April 8, 2006, BROWNING, driving a 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, hauling the 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, departed Alaska and entered Canada to drop off the trailer with the Vancouver source of supply.  BROWNING dropped off the trailer and returned to Alaska by airplane.

OA28.  On or about April 18, 2006, BROWNING flew to Seattle, Washington to pick up his 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, in order to drive it to Canada to pick up the next load of marijuana.

All of which is in violation of Title 21, United States Code, Sections 963, 952, 960(a) and (b)(1) & (b)(3).

## COUNT 2

9.      Beginning at some exact time unknown but at least on or about May 21, 2000, and continuing until at least on or about April 19, 2006, both dates being approximate and inclusive, in the District of Alaska and elsewhere, the defendants THOMAS P. RANES, NOPENON DENNIS SHINE, DYLAN N. BALES, CURTIS H. MCDONALD, KEVIN A. BROWNING, and ROBERT H. MCDONALD, together with other co-conspirators, both known and unknown to the grand jury, within the District of

Alaska and elsewhere, did unlawfully and knowingly combine, conspire, confederate, and agree with each other to distribute, and possess with intent to distribute 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A).

## METHOD OF CONSPIRACY / OVERT ACTS

10.     The allegations in paragraphs 2 through 8 above are re-alleged in their entirety and incorporated herein.

All of which is in violation of Title 21 United States Code Sections 846 and 841(b)(1)(A).

## COUNTS 3 - 136

11.     The following description of the violation of Title 18, United States Code, Section 1956(a)(1) and 2 are to be applied to Counts 3 through 136 and are incorporated therein by reference.

12.     On or about the respective dates specified below, within the District of Alaska and elsewhere, the corresponding defendant(s) as indicated, knowingly conducted and attempted to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity (namely, conspiracy to import, distribute, and to possess with intent to distribute controlled substances, a violation of 21 U.S.C. §§ 963 & 846), (1) knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; (2)

knowing that such transactions were designed in whole and in part (a) to conceal and disguise the nature, location, source, ownership and control of the proceeds of a specified unlawful activity; (b) to promote the carrying on of a specified unlawful activity; and (c) to avoid a financial transaction reporting requirement; and aided and abetted the same.

13.    On or about the dates and in the approximate amounts listed below, and in the District of Alaska and elsewhere, defendants THOMAS P. RANES, DYLAN N. BALES, and KEVIN A. BROWNING, participated in financial transactions involving proceeds derived from the specified unlawful activity described in Counts 1 & 2 of this Indictment, in that is they made cash deposits consisting of drug trafficking proceeds into bank accounts to accumulate drug trafficking proceeds in those bank accounts for the illegal purposes described in paragraph 12 above, and aided and abetted the same, to wit:

| COUNT | DATE | DEFENDANT | BANK ACCOUNT | CASH DEPOSITED |
|-------|------|-----------|--------------|----------------|
| 3 | 2/9/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 4 | 2/13/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 5 | 3/1/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 6 | 3/26/04 | Ranes | Northrim Ranes & Shine, LLC | $6,500.00 |
| 7 | 3/26/04 | Ranes | Northrim Ranes & Shine, LLC | $4,500.00 |
| 8 | 4/1/04 | Ranes | Northrim Ranes & Shine, LLC | $8,300.00 |
| 9 | 4/2/04 | Ranes | Northrim Ranes & Shine, LLC | $3,900.00 |
| 10 | 4/9/04 | Ranes | Northrim Ranes & Shine, LLC | $8,900.00 |
| 11 | 4/12/04 | Ranes | Northrim Ranes & Shine, LLC | $8,600.00 |

| 12 | 4/15/04 | Ranes | Northrim Ranes & Shine, LLC | $6,910.00 |
|----|---------|-------|-----------------------------|-----------|
| 13 | 4/16/04 | Ranes | Northrim Ranes & Shine, LLC | $8,950.00 |
| 14 | 4/20/04 | Ranes | Northrim Ranes & Shine, LLC | $5,175.00 |
| 15 | 4/30/04 | Ranes | Northrim Ranes & Shine, LLC | $6,102.00 |
| 16 | 6/18/04 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |
| 17 | 7/2/04 | Ranes | Northrim Ranes & Shine, LLC | $8,740.00 |
| 18 | 7/8/04 | Ranes | Northrim Ranes & Shine, LLC | $5,850.00 |
| 19 | 7/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 20 | 7/9/04 | Ranes | Northrim Ranes & Shine, LLC | $4,400.00 |
| 21 | 7/23/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 22 | 8/13/04 | Ranes | Northrim Ranes & Shine, LLC | $8,782.00 |
| 23 | 8/30/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 24 | 9/2/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 25 | 9/3/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 26 | 9/7/04 | Ranes | Northrim Ranes & Shine, LLC | $9,620.00 |
| 27 | 9/7/04 | Ranes | Northrim Ranes & Shine, LLC | $1,371.00 |
| 28 | 9/8/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 29 | 9/14/04 | Ranes | Northrim Ranes & Shine, LLC | $7,576.00 |
| 30 | 9/21/04 | Ranes | Northrim Ranes & Shine, LLC | $8,400.00 |
| 31 | 9/23/04 | Ranes | Northrim Ranes & Shine, LLC | $17,660.00 |
| 32 | 9/24/04 | Ranes | Northrim Ranes & Shine, LLC | $6,103.00 |
| 33 | 10/8/04 | Ranes | Northrim Ranes & Shine, LLC | $9,600.00 |
| 34 | 10/12/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 35 | 10/18/04 | Ranes | Northrim Ranes & Shine, LLC | $9,990.00 |
| 36 | 10/19/04 | Ranes | Northrim Ranes & Shine, LLC | $9,222.00 |

| 37 | 10/20/04 | Ranes | Northrim Ranes & Shine, LLC | $9,160.00 |
| 38 | 10/21/04 | Ranes | Northrim Ranes & Shine, LLC | $8,815.00 |
| 39 | 10/22/04 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 40 | 10/27/04 | Ranes | Northrim Ranes & Shine, LLC | $5,392.00 |
| 41 | 10/28/04 | Ranes | Northrim Ranes & Shine, LLC | $6,660.00 |
| 42 | 10/29/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 43 | 11/1/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 44 | 11/2/04 | Ranes | Northrim Ranes & Shine, LLC | $9,835.00 |
| 45 | 11/3/04 | Ranes | Northrim Ranes & Shine, LLC | $8,861.30 |
| 46 | 11/4/04 | Ranes | Northrim Ranes & Shine, LLC | $9,085.00 |
| 47 | 11/5/04 | Ranes | Northrim Ranes & Shine, LLC | $9,170.00 |
| 48 | 11/8/04 | Ranes | Northrim Ranes & Shine, LLC | $8,600.00 |
| 49 | 11/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,900.00 |
| 50 | 11/12/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 51 | 11/19/04 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 52 | 12/1/04 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 53 | 12/3/04 | Ranes | Northrim Ranes & Shine, LLC | $9,860.00 |
| 54 | 12/7/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 55 | 12/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 56 | 12/10/04 | Ranes | Northrim Ranes & Shine, LLC | $8,300.00 |
| 57 | 12/22/04 | Ranes | Northrim Ranes & Shine, LLC | $5,500.00 |
| 58 | 12/27/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 59 | 12/28/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 60 | 12/30/04 | Ranes | Northrim Ranes & Shine, LLC | $4,060.00 |
| 61 | 1/6/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |

| 62 | 1/10/05 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 63 | 1/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,700.00 |
| 64 | 1/13/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 65 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |
| 66 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 67 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $1,000.00 |
| 68 | 1/20/05 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |
| 69 | 1/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,500.00 |
| 70 | 1/27/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 71 | 1/28/05 | Ranes | Northrim Ranes & Shine, LLC | $7,840.00 |
| 72 | 2/1/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 73 | 2/3/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 74 | 2/4/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 75 | 2/8/05 | Ranes | Northrim Ranes & Shine, LLC | $6,500.00 |
| 76 | 2/18/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 77 | 2/25/05 | Ranes | Northrim Ranes & Shine, LLC | $4,000.00 |
| 78 | 3/1/05 | Ranes | Northrim Ranes & Shine, LLC | $9,300.00 |
| 79 | 3/3/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 80 | 3/8/05 | Ranes | Northrim Ranes & Shine, LLC | $3,100.00 |
| 81 | 3/10/05 | Ranes | Northrim Ranes & Shine, LLC | $3,100.00 |
| 82 | 3/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 83 | 3/14/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 84 | 3/16/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 85 | 4/1/05 | Ranes | Northrim Ranes & Shine, LLC | $5,800.00 |
| 86 | 4/8/05 | Ranes | Northrim Ranes & Shine, LLC | $6,240.00 |

| 87 | 4/20/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 88 | 4/21/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 89 | 4/22/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 90 | 4/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 91 | 4/25/05 | Ranes | Northrim Ranes & Shine, LLC | $4,500.00 |
| 92 | 4/26/05 | Ranes | Northrim Ranes & Shine, LLC | $5,400.00 |
| 93 | 4/29/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 94 | 5/6/05 | Ranes | Northrim Ranes & Shine, LLC | $8,480.00 |
| 95 | 5/9/05 | Ranes | Northrim Ranes & Shine, LLC | $7,000.00 |
| 96 | 5/16/05 | Ranes | Northrim Ranes & Shine, LLC | $3,000.00 |
| 97 | 5/16/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 98 | 5/19/05 | Ranes | Northrim Ranes & Shine, LLC | $9,820.00 |
| 99 | 5/20/05 | Bales<br>Ranes | Northrim Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,450.00 |
| 100 | 5/20/05 | Bales<br>Ranes | Wells Fargo Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,300.00 |
| 101 | 5/20/05 | Bales<br>Ranes | Alaska USA FCU Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,300.00 |
| 102 | 5/20/05 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 103 | 5/27/05 | Ranes | Northrim Ranes & Shine, LLC | $9,163.85 |
| 104 | 5/31/05 | Ranes | Northrim Ranes & Shine, LLC | $4,200.00 |
| 105 | 5/31/05 | Ranes | Northrim Ranes & Shine, LLC | $4,321.00 |
| 106 | 6/2/05 | Ranes | Northrim Ranes & Shine, LLC | $8,583.96 |
| 107 | 6/3/05 | Ranes | Northrim Ranes & Shine, LLC | $8008.32 |
| 108 | 6/7/05 | Ranes | Northrim Ranes & Shine, LLC | $8,622.11 |
| 109 | 6/9/05 | Ranes | Northrim Ranes & Shine, LLC | $4,023.46 |

| | | | | |
|---|---|---|---|---|
| 110 | 6/10/05 | Ranes | Northrim Ranes & Shine, LLC | $3,700.00 |
| 111 | 6/22/05 | Ranes | Northrim Ranes & Shine, LLC | $5,069.36 |
| 112 | 6/23/05 | Ranes | Northrim Ranes & Shine, LLC | $8,913.00 |
| 113 | 6/24/05 | Ranes | Northrim Ranes & Shine, LLC | $5,011.00 |
| 114 | 6/28/05 | Ranes | Northrim Ranes & Shine, LLC | $8,206.60 |
| 115 | 6/28/05-<br>6/29/05 | Bales<br>Ranes | Northrim Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,000.00 |
| 116 | 6/29/05-<br>6/29/05 | Bales<br>Ranes | Wells Fargo Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,000.00 |
| 117 | 6/29/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 118 | 6/30/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.86 |
| 119 | 7/1/05 | Browning<br>Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine | $45,000.00 |
| 120 | 7/7/05 | Ranes | Northrim Ranes & Shine, LLC | $9,300.00 |
| 121 | 7/8/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 122 | 7/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 123 | 7/13/05 | Ranes | Northrim Ranes & Shine, LLC | $9,400.00 |
| 124 | 7/19/05 | Ranes | Northrim Ranes & Shine, LLC | $6,400.00 |
| 125 | 7/22/05 | Ranes | Northrim Ranes & Shine, LLC | $7,500.00 |
| 126 | 7/22/05-<br>7/25/05 | Browning<br>Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine, LLC | $21,500.00 |
| 127 | 7/22/05-<br>7/26/05 | Browning<br>Ranes | Northrim Kevin Browning<br>FNBA Ranes & Shine | $28,500.00 |
| 128 | 7/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,850.00 |
| 129 | 7/27/05 | Browning<br>Ranes | Northrim Kevin Browning<br>FNBA Ranes & Shine, LLC | $68,000.00 |

| 130 | 7/27/05 | Browning Ranes | Northrim Kevin Browning Northrim Ranes & Shine, LLC | $52,000.00 |
| 131 | 8/5/05 | Ranes | Northrim Ranes & Shine, LLC | $6,100.00 |
| 132 | 8/12/05 | Browning Ranes | Northrim Kevin Browning Northrim Ranes & Shine, LLC | $37,000.00 |
| 133 | 10/7/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 134 | 11/8/05 | Browning Ranes | Northrim Kevin Browning Northrim Ranes & Shine, LLC | $22,500.00 |
| 135 | 2/10/06- 2/14/06 | Ranes | Northrim Ranes & Shine, LLC | $42,000.00 |
| 136 | 2/13/06 | Ranes | First National Bank Alaska, Ranes & Shine, LLC | $8,100.00 |

All of which is in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(1)(B)(ii) and 2.

## COUNTS 137 - 140

14. On or about the respective dates specified below, within the District of Alaska and elsewhere, the defendant, THOMAS P. RANES, did knowingly transport, transmit, and transfer monetary instruments and funds in the form of wire transfers, in the amounts set forth below, from the Northrim Bank Ranes & Shine, LLC bank account in the United States, to a place outside the United States, to wit, the Marine Transport Bank, in Odessa, Ukraine, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of an unlawful activity (namely, conspiracy to import, distribute, and to possess with intent to distribute controlled substances, a violation of 21 U.S.C. §§ 963 & 846) and knowing that such transportation

was designed in whole or in part to conceal and disguise the nature, location, source,

ownership, and control of the proceeds of specified unlawful activities described in Counts

1 & 2 of this Indictment, and aided and abetted the same, to wit:

| COUNT | DATE | AMOUNT WIRED |
|-------|------|--------------|
| 137 | 10/20/04 | $40,000.00 |
| 138 | 11/1/04 | $40,000.00 |
| 139 | 11/4/04 | $22,000.00 |
| 140 | 11/16/04 | $85,000.00 |

All of which is in violation of Title 18, United States Code, Sections

1956(a)(2)(B)(i) and 2.

## COUNT 141

### CRIMINAL FORFEITURE—DRUG OFFENSES

14.    Upon conviction of one or more of the controlled substance offenses alleged

in Counts 1 and 2 of this Indictment, defendants THOMAS P. RANES, NOPENON

DENNIS SHINE, DYLAN N. BALES, CURTIS H. MCDONALD, KEVIN A.

BROWNING, and ROBERT H. MCDONALD shall forfeit to the United States any

property constituting, or derived from, proceeds obtained, directly or indirectly, as a result

of the said violations pursuant to 21 U.S.C. § 853(a)(1), and any property used, or intended

to be used, in any manner or part, to commit, or to facilitate the commission of the said

violations pursuant to 21 U.S.C. § 853(a)(2), including but not limited to:

a.  Real Property

1.  Real property located at 14033 PICKETT STREET, ANCHORAGE,

ALASKA 99516, including all that lot or parcel of land, together with its

buildings, appurtenances, improvements, fixtures, attachments, and

easements, more particularly described as:

> Lot Five (5), Kijik Subdivision, according to the official plat thereof,
> filed under Plat Number 66-148, in the Records of the Anchorage
> Recording District, Third Judicial District, State of Alaska; and

2.  Real property located at 6310 E. 140th AVENUE, ANCHORAGE,

ALASKA 99516, including all that lot or parcel of land, together with its

buildings, appurtenances, improvements, fixtures, attachments, and

easements, more particularly described as:

> Lot One (1), Kijik Subdivision, Parcel Number 017-092-22-000, in
> the Records of the Anchorage Recording District, Third Judicial
> District, State of Alaska.

b.  Vehicles Used to Facilitate Crimes

1. 2004 BLACK MERCEDES-BENZ MODEL E55, SEDAN 4-DOOR,
Alaska License Number ERK649, VIN WDBUF76J54A421493;

2. 2005 BLACK FORD F150 SUPERCREW, CREW PICKUP TRUCK,
Alaska License Number EVC524, VIN 1FTPW14575KE78713;

3. 2005 BEIGE FORD F250 SUPER DUTY, 4-DOOR EXTENDED CAB
PICKUP TRUCK, Alaska License Number EVG533, VIN
1FTSX21P95ED33593;

4. 2001 WHITE 5TH WHEEL GOOSENECK FLATBED TRAILER, Alaska
License Number 1769SH, VIN 5BYEG24201E000551;

5. 2005 BLUE CHEVROLET K2500HD SILVERADO, 4-DOOR EXTENDED CAB PICKUP TRUCK WITH TOPPER, Alaska License Number ESG274, VIN 1GCHK292X5E121481;

6. 2005 SILVER TRITON ENCLOSED SNOWMACHINE TRAILER, Alaska License Number 9091RN, VIN 4TCSU22045HP01335;

7. 2004 WHITE FORD F350 CREW CAB DUAL WHEEL PICKUP TRUCK, Alaska License Number EYC813, VIN 3D3MS48C95G17699; and

8. 2000 BLACK FORD F350 EXTENDED CAB DUALLY PICKUP TRUCK, Alaska License Number ENF430, VIN 1FTWX33F2YEC74029.

c. Equipment Used to Facilitate Crimes

1. VOLVO L-110E FRONT END LOADER; and

2. GENIE MANLIFT, 80 FOOT.

d. Proceeds of Crimes

1. 2001 BLUE FORD MUSTANG GT COUPE, Alaska License Number EPH366, VIN 1FAFP42X91F124652;

2. 2004 BLACK FORD EXPEDITION EDDIE BAUER, 4-DOOR WAGON/SPORT UTILITY, Alaska License Number EMC331, VIN 1FMPU18L94LA04832;

3. 2003 H2 HUMMER, Alabama License Number unknown, VIN unknown;

4. 2002 BLACK SLND FLATBED, Alaska License Number 5271RL, VIN 2S9EB331X21029929;

5. 2005 WHITE TRAILKING FLATBED TRAILER, Alaska License Number 4191SK, VIN 1TKU016285M010123;

6. 1993 BLUE FORD F250 SUPER CAB PICKUP TRUCK with diamond plate bed side protectors, Alaska License Number 9267CX, VIN 1FTHX26H2PKA88541;

7. 2004 WHITE FORD F450 SUPER DUTY, 4-DOOR EXTENDED CAB CHASIS, Alaska License Number ETD875, VIN 1FDXX47P84EC50305;

8. 2006 TAN TRAILKING FLATBED TRAILER, Alaska License Number, 5702SK, VIN 1TKU016286M072915;

9. 2002 BLACK HAULMARK ENCLOSED FLATBED CAR TRAILER, Alaska License Number 8686RP, VIN 4XSGB28232G037941;

10. YELLOW FLATBED TOW TRUCK, acquired from Green's Towing, Alaska License Number unknown, VIN unknown;

11. 2004 YELLOW INTERNATIONAL FLATBED TOW TRUCK, Alaska License Number EMF695, VIN 1HTMMAAM44H654555;

12. 2003 FORD MUSTANG COBRA, STREET LEGAL DRAGSTER, manufactured by SKINNY KID RACING, Color: Yellow with Red Flames;

13. 1964 RED PONTIAC GTO, 2-door, Alaska License Number EWK484, VIN 824F23210

14. Customized GOLF CART;

15. 1971 GREEN CHEVROLET STANDARD CAB SHORTBED 4X4 PICKUP TRUCK, Alaska License Number ENT716, Serial Number KE141S669517 ; and

16. 1994 BLUE FORD F350 DUALLY CREW CAB 4X4 PICKUP TRUCK, Alaska License Number EHD375, VIN 1FTJW36H9REA36299

f.  Money Judgment

A sum of money equal to $1,440,000.00 IN UNITED STATES CURRENCY, representing the amount of proceeds obtained as a result of the offenses described in Counts 1 and 2 of this Indictment, for which the defendants are jointly and severally liable.

15.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p),  to seek forfeiture of any other substitute property of said defendants up to the value of the forfeitable property described above.

## COUNT 142

### CRIMINAL FORFEITURE—MONEY LAUNDERING

16.     Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of one or more of the offenses set forth in Counts 3 through 136 shall forfeit to the United States the following property:

a.  All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or

transfer in violation of Section 1956; 2) all commissions, fees and other property

constituting proceeds obtained as a result of those violations; and 3) all property used in

any manner or part to commit or to facilitate the commission of those violations.

   b.  A sum of money equal to the total amount of money involved in each

offense for which the defendant is convicted.  If more than one defendant is convicted of an

offense, the defendants so convicted are jointly and severally liable for the amount involved

in such offense.

  17. Each defendant shall forfeit substitute property, pursuant to Title 21, United

States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 9, of

the defendant, if the property described in paragraph 16, or any portion thereof, cannot be

located upon the exercise of due diligence; has been transferred, sold to or deposited with a

//

//

//

third party; has been placed beyond the jurisdiction of the court; has been substantially

diminished in value; or has been commingled with other property which cannot be

divided without difficulty.

All of which is in accordance with Title 18, United States Code, Section 982(a)(1),

and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Frank V. Russo
FRANK V. RUSSO
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov

s/ Deborah M. Smith
DEBORAH M. SMITH
Acting United States Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: deb.smith@usdoj.gov


DATED: ___4/19/06_____