# EXHIBIT A

**FEDERAL PUBLIC DEFENDER**
Western District of Washington

December 27, 2006

Mr. Frank V. Russo
Assistant United States Attorney
Federal Bldg. & U.S. Courthouse
222 W. Seventh Ave., #9, Room 253
Anchorage, AK 99513-7567

     Re:     *United States v. Thomas Ranes*, Case # 3:06-cr-00041-RRB-JDR
             Discovery Request

Dear Frank:

     I'm looking forward to receiving the discovery materials you are compiling for disclosure this week. Please ask your legal assistant to FedEx the materials and let us know if we need to supply replacement cds or tapes. Your legal assistant can call my office for our Fed Ex account number, and ask to speak to any of the legal secretaries if you wish that billed to our office. Also thank you for agreeing to make the physical evidence and documents available for inspection on the afternoon of January 10th. Our flight should get in some time that morning so we should be ready to begin as early as noon. Let me know where you want to conduct this examination and we will be there. Later in this letter I will identify the items we would like to inspect on this trip in order of importance to us.

     **Formal Discovery Request**

     On behalf of Thomas Ranes I am requesting discovery under Federal Rule of Criminal Procedure 16, 12(b)(4) and Mr. Ranes' constitutional right of access to exculpatory evidence. Specifically, please provide the following:

     1. **Defendant's Statements.** Copies of any statements made by Mr. Ranes as required by Rule 16(a)(1)(A) and (B).

     2 **Defendant's Prior Record.** Any evidence concerning a prior record of Mr. Ranes. Fed. R. Cr. P. 16(a)(1)(D).

Mr. Frank V. Russo
December 21, 2006
Page 2

      3.      **Inspection of documents and objects. Fed. R. Cr. P. 16(a)(1)(E).** At our January 10, 2007 meeting I would like to inspect all of the items seized from Mr. Ranes' home, business, automobiles, his person or any other location associated with Mr. Ranes. We also wish to inspect any and all property and documents seized in the searches of homes or other property of Tom Cody, Joe Bryant, and Nopenone Shine. If there is time on this trip I would like to inspect the evidence seized from or provided by all other charged and uncharged co-conspirators.

      In addition to these items for inspection, we would like to see all of the items the government intends to use in its case in chief at trial. I understand that these decisions may not yet be made so that we may need to inspect those items at a later date.

      Also please provide access to, inspection and copies of any audio, photographic, video and reports of surveillance conducted of Tom Cody and Joe Bryant from May 21, 2000, until the end of the conspiracy. This request includes surveillance conducted by Alaska state and local law enforcement agencies and Canadian law enforcement. This information is material to defense preparation.

      Please provide us with a copy of Tom Cody's passports, both expired and unexpired and any information in the custody of the United States government concerning his international travel including places and dates of travel. Also provide copies of any correspondence, phone records, e-mail records or other communications between Tom Cody and individuals or entities overseas from the inception of the conspiracy to the present.

      After we review the discovery we receive this week, I may have some additional items I would like to inspect.

      4.      **Reports of examinations and tests. Fed. R. Cr. P. 16(a)(1)(F).** Any information that fits in this category we will want to inspect and copy. Specifically, any and all forensic testing that was conducted either by federal authorities or Alaska authorities concerning the disappearance of Thomas Cody clearly falls within this provision. This request is not limited to reports or results of examinations that the government intends to introduce at trial. Any examinations and tests relating to the homicide are material to our defense.

      5.      **Expert Witnesses. Fed. R. Cr. P. 16(a)(1)(G).** We request that the government provide us with a written summary of any testimony that the government intends to use under Federal Rule 702, 703, or 705, as well as the name, address and telephone

Mr. Frank V. Russo
December 21, 2006
Page 3

**FEDERAL PUBLIC DEFENDER**
Western District of Washington

number of the expert. I request that this be provided at least 90 days before trial so we would have time to engage an independent expert to review the work of the government's expert and his or her proposed testimony.

      6.      ***Brady/Giglio* Material.** This includes favorable evidence known to other government agents including the Anchorage Police Department, the Alaska State Patrol and the RCMP or other Canadian law enforcement agencies. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). With respect to Canadian law enforcement please include our request for Brady/Giglio material in any formal or informal requests for assistance from that government. It is my understanding that the U.S. government takes the position that only the government can make requests of the Canadian government for assistance, and that the MLAT procedure is not directly available to defendants in criminal cases. Therefore we must rely on you to make this request for us as part of your obligations under *Brady/Giglio/Kyles*.

With respect to the allegation that Mr. Ranes is responsible for the murder of Thomas Cody, the following specific items are requested as *Brady/Giglio/Kyles* material:

    (a)    Any witness reports that Mr. Cody was seen alive after 3:00 p.m. on June 1, 2005.

    (b)    Any information that Mr. Cody's credit cards, debit cards, bank accounts, automobiles, telephones, e-mail addresses or Social Security Number were utilized after the reported alleged date and time of his death.

    (c)    Any forensic evidence gathering that failed to reveal evidence suggesting a homicide or a violent death. For example, any DNA testing, gunshot residue testing, blood spatter testing, that was performed that came back with a negative results or inconclusive results.

    (d)    Any evidence whatsoever, including statements of witnesses, co-defendants, informants or cooperators which is inconsistent in any fashion with any government witnesses who claim that they either witnessed the alleged killing of Mr. Cody or claim that they heard statements made by one of the defendants or conspirators concerning this alleged killing.

Mr. Frank V. Russo
December 21, 2006
Page 4

**FEDERAL PUBLIC DEFENDER**
Western District of Washington

This would include information that could be used to impeach hearsay statements that the government will be offering under the co-conspirator exception to the hearsay rule or other exceptions to the hearsay rule. See ER 806.

7.  **Statements of Co-Defendants.** Please provide statements of co-defendants so I can evaluate whether there is a basis for filing a motion for severance. *See* Fed. R. Cr. P. 12(b)(4). Please advise when you intend to provide these statements.

8.  **Pretrial Notice of ER 404(b) Evidence.** Please advise whether the government will provide notice of such evidence and if so when it intends to do so.

9.  **The Giglio Request.** This request not only includes plea agreements, promises of leniency, inducements to testify and financial incentives, but also includes any material affecting the credibility of a witness.

10. **The materiality standard for Brady material as applied to the homicide allegation.** At the post trial stage, the "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Given the fact that there is no body, no eyewitnesses, and no significant forensic evidence establishing a homicide, much less my client's involvement, I would argue that the government should take the broadest view of what constitutes *Brady* material in this case. In fact at the pretrial stage the *Brady* materiality standard must be even broader than that set forth above from *Kyles,* which was a retrospective post trial examination of the evidence for reversible error. The proper pretrial standard as to what can be considered "favorable" is any evidence relating to guilt or punishment "and which tends to help the defense by either bolstering the defense's case or impeaching prosecution witnesses." *United States v. Sudikoff,* 36 F. Supp2d 1196 (C.D. Cal. 1999).

11. **Timing of Brady Disclosures.** The material must be disclosed in time for its effective use at trial. Given the logistics of this case, i.e. my office is in Seattle, much of the evidence is in Alaska, some information evidence and leads are outside of Alaska, including foreign countries, it is unrealistic to expect the defense to be able to make effective use of last minute disclosures of exculpatory evidence or information. This is particularly true if the *Brady* information is of the type that is not itself admissible evidence but which would lead through further defense investigation to admissible evidence. Therefore we

Mr. Frank V. Russo
December 20, 2006
Page 5

request that you disclose *Brady* material that you become aware of at the earliest feasible opportunity.

  Thank you for your consideration of these specific requests.

            Sincerely,

            Michael Filipovic
            Assistant Federal Public Defender

MF/bh

cc:  Paula Semmes Deutsch

# EXHIBIT B

## DEFENDANT RANES' REQUESTS FOR DISCOVERY
## AND GOVERNMENT'S RESPONSE

| Defendant's Specific Requests | Government's Response |
|---|---|
| Defendant's Statements. Fed. R. Cr. P. 16(a)(1)(A) and (B) | The government stated that they have or will provide those statements to the defense. Since making that assurance, the government has provided: (1) statements of Mr. Ranes to the Anchorage Police Department prior to his arrest; (2) a written report of statements Mr. Ranes made after his arrest to the DEA and Anchorage Police; and (3) recordings of statements Mr. Ranes has made by telephone and e-mail from the Federal Detention Center at SeaTac. When asked, the government indicated that the only statements that it intended to introduce in its case in chief at trial were those made to the Anchorage Police Department prior to Mr. Ranes' arrest. |
| Defendant's Prior Record. Fed. R. Cr. P. 16(a)(1)(D) | The government has complied with this request. |
| Inspection of Documents and Objects. Fed. R. Cr. P. 16(a)(1)(E) | Defense counsel has been given access to evidence and items seized by the DEA and the Anchorage Police Department. The government has provided or agreed to provide copies of many of the specific items we have identified. Given the volume of this material, defense counsel is still reviewing the copied items. The government has declined to provide certain items that were requested, stating that they were unrelated to the investigation of Mr. Ranes. If defense counsel identifies any specific object or item for which inspection has not been provided, defendant will subsequently file a specific motion addressed to such an item or items. |

**EXHIBIT B, P. 1**

| | |
|---|---|
| Reports of Examinations and Tests. Fed. R. Cr. P. 16(a)(1)(F) | The government has stated that it will comply with this request for the results of any and all forensic testing conducted either by federal authorities or Alaska authorities, including those reports or results of examinations which the government does not intend to introduce at trial. To date, we have received some forensic testing reports, but believe additional reports are forthcoming. |
| Expert Witnesses. Fed. R. Cr. P. 16(a)(1)(G) | Defendant Nopenon Shine has requested that this information be provided by June 2007. Defendant Ranes requested that it be provided no later than July 15, 2007. The government, in its discovery conference certificate, states that "the government will notify the defense of these experts in a timely manner sufficient to allow the defense an opportunity to retain its own expert witnesses, if necessary." The government does not state its view as to what it believes is a sufficient time to allow the defense an opportunity to retain its own experts. |
| *Brady/Giglio* Material | The government has promised that it would provide defense counsel with a letter on this topic. That letter has not yet been provided. The government has also stated that it disagrees with the defendant with respect to some of the specific items requested in this category. |
| Statements of Co-Defendants | The government has refused to provide this information. |
| Pretrial Notice of ER 404(b) Evidence | The government stated that it would provide this in its trial brief. |
| The *Giglio* Request | The government has not set forth its position on whether it agrees that its *Giglio* responsibilities include all material affecting the credibility of a government witness. |
| The materiality standard for *Brady* material as applied to the homicide allegation | The government has not set forth its position on this topic. |

**EXHIBIT B, P. 2**

| Timing of *Brady* Disclosures | The government has not clearly set forth its position on the timing of *Brady* disclosures, although it has already provided some *Brady* material. |

O:\All\Ranes.tho\Pleadings\Mike\ExhibitBDiscmotion.wpd