NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
SHAWN FULLER
Assistant U.S. Attorneys
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
frank.russo@usdoj.gov
shawn.fuller@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00041-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | RESPONSE IN PARTIAL |
| vs. | ) | OPPOSITION TO |
| | ) | DEFENDANTS' MOTIONS |
| THOMAS P. RANES, and | ) | FOR DISCOVERY FILED AT |
| NOPENONE DENNIS SHINE, | ) | DOCKET S 372 and 374 |
| | ) | |
| Defendants. | ) | |

COMES NOW the United States of America, by and through undersigned

counsel, and hereby responds to the defendants motions to compel discovery.

Defendant Shine filed a motion to compel discovery on February 27, 2007, at docket

372.  This motion was joined by defendant Ranes at docket 375.  Defendant Ranes

then filed a motion for discovery on March 1, 2007, at docket 374, which was joined

by defendant Shine at docket 378.  Because both motions address identical issues, the responses to these issues are addressed herein.  The United States responses to the defendants' various requests are set forth below:

### *Request for rough notes (Shine's Requests 1 & 4)*

The defendants have requested  rough notes of both defendants' interviews with investigators.  Pursuant to Fed. R. Crim. P. 16(a)(1)(A), the United States has turned over a copies of investigator's reports of defendant Shine's statement to law enforcement.  See Bates stamp numbers 2-0001 - 2-0004; 2-00025 - 2-00042.  With respect to defendant Ranes, the United States has turned over two audio recordings of interviews with Ranes conducted in June 2005: one to Officer Pablo Paiz and one to Detective Rod Ryan.  In addition, the United States has turned over an investigator's report of interview of Ranes conducted in October 2006.  See Bates stamp numbers 01-00011 - 01-00055.  The United States has provided additional statements of Ranes and Shine that are contained in jail recordings, email, wiretap recordings, and investigators reports.  The United States reserves the right to use all these statements in its case-in-chief.

With regard to investigator's rough notes of interviews, the United States responds that "notes" made by government agents are not "statements", as defined by Fed. R. Crim. Proc. 16.  United States v. Griffin, 659 F2d 932 (9th Cir. 1981); United

States v. Alvarez, 86 F.3d 901 (9th Cir. 1996); United States v. Brown, 303 F.3d 582

(5th Cir. 2002) (The government satisfies its obligation Rule 16 requiring it to disclose

upon request written or recorded statements made by a defendant when it discloses an

agent's summary reports that contains all of the information contained in the agent's

interview notes.); see, e.g., 18 U.S.C. § 3500(e)(2) (defining "statement" as, among

other things, "a stenographic, mechanical, electrical, or other recording, or a

transcription thereof, which is a substantially verbatim recital of an oral statement

made by said witness and recorded contemporaneously with the making of such oral

statement"). However, the United States acknowledges its responsibility to retain

these rough notes and examine them for Brady material. See United States v. Alvarez,

86 F.3d 901 (9th Cir. 1996). Accordingly, the United States agrees to ask investigators

to retain such notes and will review them to determine if there exist any discrepancies

with the formal written reports provided to the defendants. If such discrepancies exist,

the United States will turn over the relevant portions of such rough notes. This

analysis applies to defendant's request for witness statements in Shine's Request 4 as

well.

### *Requests for Brady and Giglio Material (Shine's Requests 2, 5, 6, 7, 8, 10, 12, 15, and 18; Ranes Requests B, E, and F)*

Many of the defendants' request concern the United States' responsibilities to

produce exculpatory and impeachment evidence, as well as the timing of such

production.  The United States' position on these issues is set forth below.


    A.    The *Brady* Standard

    To the extent that the defendant requests exculpatory evidence, the United

States is well aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963),

Giglio v. United States, 405 U.S. 150 (1972), and their progeny.  Brady requires the

disclosure of evidence favorable to the defendant where such evidence is material to

guilt or punishment.  Brady, 373 U.S. at 87.  The rule of Brady also extends to

impeachment evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985).  The

disclosure of evidence affecting the credibility of a witness falls within Brady only if

the reliability of the given witness may be determinative of guilt or innocence.  Giglio,

405 U.S. at 154.

    The prosecution does not have a duty to disclose all information that might

affect the jury's decision.  Rather, the government is required to provide the defense

with only information that meets the appropriate standard of materiality.  See  United

States v. Agurs, 427 U.S. 97, 108-112 (1976); United States v. Cadet, 727 F.2d 1453,

1467 (9th Cir. 1984).  Before information rises to the level of Brady material, it must

meet three threshold prerequisites.  It must be:  (1) within the Government's

possession (United States v. Gatto, 763 F.2d 1040 (9th Cir. 1985); United States v.

Friedman, 593 F.2d 109, 119-120 (9th Cir. 1979)); (2) exculpatory in itself (United

States v. Flores, 540 F.2d 432 (9th Cir. 1976)); and (3) material to the defendant's

guilt or punishment.  It is the last requirement - materiality - that is most significant in

any proper Brady analysis.

The Supreme Court addressed the issue of materiality as it affects the

Government's due process obligations under Brady in Bagley, 473 U.S. 667, where the

Court stated:

> The evidence is material only if there is a reasonable
> probability that, had the evidence been disclosed to the
> defense, the result of the proceeding would have been
> different.  A 'reasonable probability' is a probability
> sufficient to undermine confidence in the outcome.

Id. at 682.

The Ninth Circuit has repeatedly stressed that materiality is a necessary

prerequisite to disclosure under Brady.  When the prosecution has knowledge of and

access to potentially exculpatory Brady evidence, the evidence must be material.

United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir.1989).  The requisite showing of

materiality is not satisfied by conclusory allegations that the requested information is

material to the preparation of the defense.  United States v. Condor, 423 F.2d 904, 910

(9th Cir. 1970); see also, Cadet, 727 F.2d at 1467.  Moreover, mere speculation about

the existence of Brady material does not require inspection of the Government's

evidence.  United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986 ).  Similarly

a "hunch" that material evidence might be discovered in certain areas is not a

sufficient showing of materiality to warrant discovery. <u>Flores</u>, 540 F.2d at 427-438.

<u>Brady</u> also does not require the Court to make an in camera search of the Government

files. <u>Michaels</u>, 796 F.2d 1116, *citing* <u>United States v. Harris</u>, 409 F.2d 77, 80-81 (4th

Cir. 1969).

Accordingly, the defendant must make a factually based showing of materiality.

<u>Id.</u> at 437.  As the court stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir.

1980):

> In response to a request for exculpatory evidence the
> prosecution does not have a constitutional duty to disclose
> every bit of information that might affect the jury's decision;
> it need only disclose information favorable to the defense
> that meets the appropriate standard of materiality.

See also, <u>Von Brandy</u>, supra; <u>United States v. Marshall</u>, 532 F.2d 1279, 1285 (9th Cir.

1976) (defining materiality under previous Rule 16(b) to mean evidence that would

substantially alter the quantum of proof in defendant's favor).

The foregoing authorities demonstrate that the defendant's requests under <u>Brady</u>

must be for significantly exculpatory material; each item must be likely to have a

determinative impact on the guilt or punishment of the defendant.  Due process does

not require the government to search its files for all arguably favorable information,

but only for that favorable information likely to have a probable impact on the

outcome of the case.  This standard applies both to direct evidence and to the

government's obligation to turn over exculpatory evidence bearing upon witness

credibility.  As to the latter category of information, the government's obligation is to disclose significant impeachment material - material that could be determinative to the credibility of a key Government witness.  See <u>Bagley</u>, <u>supra</u>.

###  B.     *Brady* is not a Discovery Device

It is also well established that there is no general constitutional right to pretrial discovery in federal criminal cases and <u>Brady</u> did not establish such a right. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 549 (1977); accord., <u>Flores</u>, 540 F.2d 432. <u>Brady</u> simply is not to be used as a discovery tool for the defense.  <u>United States v. Jones</u>, 612 F.2d 453, 455 n.1 (9th Cir. 1980), citing <u>Wardius v. Oregon</u>, 412 U.S. 470, 474 (1973).  Rather, <u>Brady</u>  is a rule of fairness and obligation.  <u>U.S. v. Beasley</u>, 576 F.2d 626 (5th Cir. 1978), <u>cert. denied</u>, 440 U.S. 947 (1979), <u>citing Agurs</u>, 427 U.S. at 107.

Hence, <u>Brady</u> does not require the Government to disclose every piece of evidence that could arguably be relevant.  <u>United State v. Von Brandy</u>, 726 F.2d 548, 551 (9th Cir. 1984).  Rather, the Government must disclose only evidence that is both favorable and material to the defense.  <u>Gardner</u>, 611 F.2d at 774-75.  See also, <u>Cadet</u>, 727 F.2d at 1467.  With regard to general discovery obligations, the government has

and will continue to comply the requirements of Federal Rule of Criminal Procedure
16.

C.    The United States' Responsibilities under *Brady*

The United States is aware of, and will comply with, the Court's Order at

docket 156, requiring production of <u>Brady</u> material as soon as practicable.  <u>See, e.g.,</u>

<u>United States v. Nagra</u>, 147 F.3d 875, 881 (9th Cir. 1998) (<u>Brady</u> requires disclosure

of material favorable information before trial). The Government also acknowledges its

duty to conduct a <u>Brady</u> review of the statements of all non-testifying witnesses. The

Ninth Circuit holds that although <u>Brady</u> material must be disclosed while it is still of

substantial value to the accused, it need not be produced before trial.  <u>United States v.</u>

<u>Manning</u>, 56 F.3d 1188, 1198 (9th Cir. 1995).  The Government also acknowledges its

obligation under <u>Giglio</u> to produce the criminal histories, immunity or any plea

agreements or promises made to Government witnesses.  The disclosure of evidence

affecting the credibility of a witness falls within Brady only if the reliability of the

given witness may be determinative of guilt or innocence.  <u>Giglio</u>, 405 U.S. at 154.

Such information will also be turned over with the Jencks Act material.

As held by the Supreme Court, "[g]enerally, the need for evidence to impeach

witnesses is insufficient to require its production in advance of trial."  <u>United States v.</u>

<u>Nixon</u>, 418 U.S. 683, 701 (1974).  In addition, such disclosure would reveal potential

witnesses, which may or may not turn out to be the witnesses who testify.  This

effective pre-trial disclosure of witnesses is simply not required in a non-capital case.

United States v. Dischner, 960 F.2d 870, 890 (9th Cir. 1992).

The Jencks Act, 18 U.S.C. § 3500, unequivocally states that the defense is not entitled to a government witness's prior statements until after the witness has testified on direct examination.  After a prosecution witness testifies, the Jencks Act requires the government to produce any statements made by the witness in its possession that relate to the subject matter of the trial testimony.  United States v. Kerr, 981 F.2d 1050, 1052 (9th Cir. 1992); see also, United States v. Pisello, 877 F.2d 762, 768 (9th Cir. 1989).  The court may not compel disclosure of such statements before trial. United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  This policy is also stated in Fed. R. Crim. P. 26.2.  The substance of the Jencks Act is essentially incorporated into this rule.  Rule 26.2 does not in any way alter the delivery schedule of the statements to either party.  See, United States v. Litman, 547 F.Supp. 645, 652 (W.D. Pa. 1982), aff'd, 661 F.2d 17 (3rd Cir. 1982).

Moreover, it is clear that where the defense seeks material that qualifies as both Jencks Act and Brady material, the Jencks Act standards control.  United States v. Jones, 612 F.2d 453 (9th Cir. 1979).  The Ninth Circuit Court of Appeals has held that Brady exists as an independent foundation to preserve evidence and is not intended to override the mandate of the Jencks Act.  United States v. Bernard, 623 F.2d 551 (9th Cir. 1979).  Efforts to override the clear mandate of the Jencks Act as to the timing of

the production of statements have been systematically rejected. <u>See United States v. Taylor</u>, 802 F.2d 1108 (9th Cir. 1986); <u>United States v. Grandmont</u>, 680 F.2d 867, 874 (1st Cir. 1982); <u>United States v. Carter</u>, 621 F.2d 238, 240 (6th Cir. 1980); <u>United States v. McMillen</u>, 489 F.2d 229 (7th Cir. 1972); <u>United States v. Campagnuolo</u>, 592 F.2d 852, 858 (5th Cir. 1979).

If any persons existed whom the Government did not intend to call and who had incriminating information about this case, the Government is under no obligation to disclose that fact, as this would fall neither within <u>Brady</u> nor within any other discovery obligation.  Such production is counter to the law of this circuit.  <u>United States v. Bryan</u>, 868 F.2d 1032, 1037 (9th Cir. 1989), <u>citing United States v. Cadet</u>, 727 F.2d 1453, 1469 (9th Cir. 1984); see also <u>United States v. Little</u>, 753 F.2d 1420, 1440-1441 (9th Cir. 1984) (as amended February 15, 1985).  Whether any such information is incriminating or exculpatory, pre-trial production is tantamount to providing a witness list, which is not required in a non-capital case.  <u>United States v. Dischner</u>, 960 F.2d 870, 890 (9th Cir. 1992); <u>United States v. Steele</u>, 759 F.2d 706, 709 (9th Cir. 1985); <u>United States v. Sukumolachan</u>, 610 F.2d 685, 688 (9th Cir. 1980).

Information from witnesses that does not incriminate the defendant does  not necessarily exculpate him.  The Government is simply not required to report the status of any witness it does not intend to call at trial, or to report statements which are not

exculpatory.  <u>Bryan</u>, 868 F.2d at 1037; See also <u>United States v. Little</u>, 753 F.2d 1420,

1440-41 (9th Cir. 1984) (amended February 15, 1985); <u>United States v. Sims</u>, 808

F.Supp. 607, 615 (N.D. Ill. 1992).  Couching such a  request as a <u>Brady</u> request is of

no avail.  Contrary to the defendant's implicit suggestions, <u>Brady</u> does not require

early disclosure of impeachment and exculpatory material.  Thus, the United States

opposes Ranes' request for early disclosure of impeachment material pertaining to

cooperating co-defendants.  <u>See</u> Ranes' motion, pp. 4-7.


D.     <u>Application and Specific Requests</u>

The United States has alerted defense counsel that there exists Brady material

that the United States will turn over shortly.  Notwithstanding the above authorities,

the United States has already orally notified counsel of the content of some of this

material, which involve statements by  individuals who are not anticipated

government witnesses who either claim responsibility for the Cody homicide or allege

that they have heard others make such claims.[1]  More formal notice will be made

forthwith.  However, the parties and Court must be made aware of a potential conflict

of interest for counsel for defendant Shine created by one such disclosure.  A former

---

[1]     The United Stated did not tell counsel for Ranes that we would have to "agree to disagree" on <u>what constitutes</u> *Brady* material, but rather the timing of the *Giglio* disclosures and co-defendants' statements.

client of Shine's attorney has claimed responsibility for the Cody homicide. Counsel for Shine was promptly notified of this conflict, and indicated that he was not planning on withdrawing from representation. That being the case, Mr. Shine should formally waive this conflict of interest in open court.

The United States will continue to make such disclosures to the extent it becomes aware of Brady material offered by witnesses (who the government does not intend to call in its case-in-chief) that materially contradict the government's evidence. To the extent that it exists, Brady material provided by cooperating witnesses will be produced concurrently with Jencks and Giglio material. The United States also acknowledges its obligation under Giglio to produce the criminal histories, immunity agreements, and any plea agreements or promises made to Government witnesses. Such information will also be turned over with any Jencks Act material. The timing of such a production has not yet been determined, though the Government does intend to produce such material at least two weeks prior to trial. More specific responses to Shine's requests are set forth below.

**Shine's Request 2** is a request for general favorable evidence. The United States acknowledges its responsibilities as outlined above.

**Shine's Request 5** is a request for evidence of bias of potential witnesses. The United States will provide this material, to the extent that it exists and it meets the above standards of materiality, concurrently with Jenks material.

*Shine's Request 6* is a request for the prior records and bad acts of government witnesses.  The United States will provide this material, to the extent that it exists, concurrently with Jenks material.

*Shine's Request 7* is a request for evidence that any prospective witness is or was under investigation by federal, state, or local authorities during the course of the present investigation.  The United States objects to the breadth and scope of such request.  See United States v. Veksler, 62 F.3d 544, 550 (3d Cir. 1995) (where grand jury investigation of witness not reasonably known to prosecutor and witness unaware of it, no *Brady* violation) and United States v. Veras, 860 F.Supp. 471, 478 (N.D. Ill. 1994) (where police officer unaware of pending investigation of his alleged perjury in another matter, no argument can be made that officer was biased by fear [of investigation] or self interest), aff'd, 51 F.3d 1365 (7th Cir. 1995).  With respect to government witnesses, the United States will provide this material to the extent required by Fed. R. Evid. 608(b), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1990), as well as Giglio.

*Shine's Request 8* is a request for evidence regarding witnesses' ability to recall due to psychiatric, medical, or drug problems.  To the extent that the United States is aware of such problems that materially affect the witness's ability to observe, the United States will disclose such problems or conditions.  The United States will disclose reports documenting such problems if such reports are in the United States'

possession.  See United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998) (government

has no obligation to obtain records from third party).

*Shine's Request 10* is a request for contradictory statements of government

witnesses.  The United States will provide this material, to the extent that it exists, and

it meets the above standards of materiality, concurrently with Jenks material.

*Shine's Request 12* is a blanket request for "favorable testimony regarding Mr.

Shine."  The United States objects to the breadth  and scope of such request.  Whether

a witness was "of unsure of or disbelieved in his involvement in the crime charged" is

irrelevant.  Again, information from witnesses that does not incriminate the defendant

does  not necessarily exculpate him.  As previously stated above, the Government is

not required to report the status of any witness it does not intend to call at trial, or to

report statements which are not exculpatory.  Bryan, 868 F.2d at 1037.  The United

States will provide this material, to the extent that it exists, it is exculpatory, and it

meets the above standards of materiality, concurrently with Jenks material.

*Shine's Request 15* is a request for promises or inducements offered to

government witnesses.  The United States will provide this material, to the extent that

it exists, concurrently with Jenks material.

*Shine's Request 18* is a request for the names of other suspects to the crime for

which the defendant is accused.  In order for evidence of another suspect to be

admissible, "there must be direct or circumstantial evidence linking the third person to

the actual perpetration of the crime." <u>Caldereon v. Coleman</u>, 150 F.3d 1105, 1117 (9[th]

Cir. 1998). The United States will provide this material, if it exists, is exculpatory,

and it meets the above standards of materiality, concurrently with Jenks material.

### *Request for Prior Record / Other Acts Evidence (Shine's Request 3;* *Ranes' Request D)*

Computer printouts of criminal records of both defendants have been provided

to the respective defendant's attorneys. The United States is aware that Mr. Shine also

has an assault related arrest and possible conviction in Hawaii that does not appear on

said printout. The United States is attempting to obtain such records. With respect to

prior bad acts, the United States anticipates giving notice of said acts within its trial

brief, or at a time the Court designates for the filing of such notices. ***Personnel Files***

***of Law Enforcement Personnel (Shine's Request 9)***

The United States is not opposed to the defendant's request that the United

States review all testifying federal law enforcement witnesses personnel files. <u>See</u>

<u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1990). Furthermore, if the United

States discovers any material subject to disclosure under <u>Brady</u>/<u>Giglio</u> the United

States will disclose that material to the defense  two to three days before the particular

witness testifies. If the United States has any doubts about disclosing any material in

the personnel files discovered  during its review, the United States agrees to provide

the material to the court for an *in camera* review.

### *List of Non-Testifying Witnesses (Request 11)*

The United States is not required to report the status of any witness it does not intend to call at trial, or to report statements which are not exculpatory.  <u>Bryan</u>, 868 F.2d at 1037; <u>supra</u>.

### *Expert Reports and Data (Shine's Request 13 and Ranes' Request A)*

The United States has been producing scientific reports and opinions contained therein as they have become available.  To date, the United States has identified chemists and arson investigators who will be called to give their opinions in this case. Reports have been provided on these witnesses, and qualifications will be provided before trial.  The United States objects to the defendants' demand to impose a June deadline on the disclosure of expert reports.  Simply because the United States stated at a trial setting conference that it could be ready for trial in June does not now impose a requirement that it have all necessary reports prepared by June, especially since the defendants' prevailed upon the Court to continue the trial until mid-October.  If, however, the defendants wish to reconsider their position, the government could allocate its resources to be ready by June, and disclose expert reports prior to such date.  Otherwise, the United States suggests a September 10 deadline, which is in accord with the Court's earlier order requiring Rule 702 notices approximately one month prior to trial.  <u>See</u> Order at docket 177.

Presently there does not appear to be many issues in this case that would involve unusual expert witnesses. In this regard, the United States disagrees with the defendant's characterization of the cellular telephone data and maps as expert data. Any testimony about such data will be fact-based – not opinion based. The data and maps are specific to each company, and the United States will be calling engineers from each company to interpret the maps and data. The data has already been provided to counsel, and the maps will be provided forthwith. In terms of explaining the significance of these maps together with the data, the defendants are free to approach representatives from the telephone companies to interpret the data – just like any other fact witness. Otherwise, the United States anticipates completing a trial exhibit that helps explain this data. Once the exhibit is complete, the defendants may inspect the exhibit pursuant to Fed. R. Crim. P. 16(a)(1)(E)(ii).

### *Disclosure of Confidential Informants (Request 16)*

The defendant makes a blanket request that the United States disclose the identity of all informants that are percipient witnesses in this case. First of all, this request should be denied because it does not pertain to the new allegations made in the Second Superseding Indictment. The Court made clear that it would not entertain requests or motions pertaining to issues that were present in the earlier indictments. The identity of informants is one such issue. Thus, the Court is justified in denying this request on this basis alone.

Nevertheless, the burden of establishing the necessity for disclosure is on the defendant. <u>United States v. Whitney</u>, 633 F.2d 902, 9ll (9th Cir. l980); <u>United States v. Prueitt</u>, 540 F.2d 995, l004 (9th Cir. l976). A mere request for disclosure is patently insufficient. <u>United States v. Trejo-Zambrano</u>, 582 F.2d 460, 466 (9th Cir. l978). Regardless, the informant in this case will be a witness at trial. The United States plans to turn over the identity of the informant, along with any attendant <u>Brady</u> / <u>Giglio</u> material, at least two weeks prior to trial. There being no apparent reason that the defendant requires this information before then, such disclosure would strike the appropriate balance between the government's need to protect its informants and the defendant's right to prepare his defense. <u>See</u> <u>United States v. Foster</u>, 815 F.2d 1200, 1202-1203 (8th Cir. 1987) (holding that earlier disclosure of informant's identity was not required where informant testified at trial and there was nothing to indicate that defendant would have done anything differently to affect result at trial had earlier disclosure been made); <u>United States v. Bonilla</u>, 615 F.2d 1262, 1264 (9th Cir. 1980) (defendant's request for pre-trial interview of informant denied). It is also noteworthy that the defendant already has information concerning the informant, which was provided in the Title III affidavits supplied in discovery. Therein, the United States sets forth the motivations and criminal history of the informant. By listening to the audio recordings provided in discovery, the defendant has gleaned the first name of

the informant.  Accordingly, the defendant appears to already have the information he

seeks in this request.

### *Identification Materials (Request 17)*

No identification procedures were used to identify the defendants.  The

percipient witnesses to the events all knew the defendants prior to their observations.

While photographs were shown to these individuals, such viewing does not

constituted an identification procedure because the witnesses already knew the

defendants by name.

### *Statements of Non-Testifying Co-Defendants (Request 19)*

Both defendants request the statements of non-testifying co-defendants in order

to evaluate the need for a severance motion pursuant to United States v. Bruton, 391

U.S. 123 (1968).  There is no constitutional right to discovery not provided for in the

Federal Rules of Criminal Procedure.  See Weatherford v. Bursey, 429 U.S. 545, 559

(1977).  The plain language of Fed. R. Crim.P. 16(a)(1)(A) pertains to the discovery

of statements 'made by the defendant.'  Fed. R. Crim. P. 16(a)(1)(A) specifically states

that a defendant is entitled to discovery of statements he wrote or otherwise recorded,

and  oral statements he made in response to interrogation by persons known to be

government agents.  United States v. Hoffman, 794 F.2d 1429, 1431 (9th  Cir.1986)

and United States v. Collins, 764 F.2d 647, 653 (9th  Cir.1985) (discovery not required

because statements were not made in response to interrogation).

The rule does not mention and is not intended to apply to the discovery of statements made by co-defendants.  See United States v. Harris, 542 F.2d 1283, 1291 (7th Cir. 1976).  Such statements are more properly governed by the Jencks Act, 18 U.S.C. 3500, Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 50 (1972), if a co-defendant testifies or has revealed any information that exculpates the defendant.  United States v. Pollack, 534 F.2d 964, 975-976 (D.C. Cir. 1976).  Nor are the defendants are not entitled to pre-trial disclosure of co-conspirator statements.  United States v. Walk, 533 F.2d 417, 420 (9th Cir. 1975) (holding that the Jencks Act prohibits the pre-trial disclosure of the witness' statements, even when such statements contain quotations allegedly attributable to the defendant).

To the extent that the United States discovers a statement it intends to use that may arguably infringe upon confrontation rights, the United States will bring such statement to the attention of the defendant and the Court in advance of trial.  Even assuming, for the sake of argument, that such a Bruton statement is identified, a number of options exist with respect to use of such statement at trial, if both defendants indeed  proceed to trial.  For example, the court  may (1) delete references in the confession to the co-defendant against whom the confession is inadmissible, see Richardson v. Marsh, 481 U.S. 200 (1987); (2) order severance of the defendants' trials; or (3) try the defendants together but before different juries, see Smith v. De Robertis, 758 F.2d 1151 (7th Cir. 1985) .  In any event, the United States submits that

the issue of severance due to <u>Bruton</u> is better addressed shortly before trial.  Quite simply, the real reason  the defendants want these statements because they want to know who is cooperating against them, what they are saying, and how damaging these statements are.  It is hard to imagine what prejudice would inure to the defendants as long as the issue of a <u>Bruton</u>-based severance is addressed shortly before trial rather than seven months before.  To be sure, the United States has no interest in violating the <u>Bruton</u> rule and potentially causing a mistrial.  Accordingly, the United States requests that such issues be raised at the pre-trial conference, currently set for September 17, 2007.

RESPECTFULLY SUBMITTED this 9th day of March, 2007, in Anchorage,

Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true
and correct copy of the foregoing was sent to
the following counsel of record on March 9, 2007, via:

(X )Electronic Filing

Michael Filipovic and Michael Dieni

Executed at Anchorage, Alaska, on November 8, 2006

s/ Frank V. Russo
Office of the U.S. Attorney