MICHAEL FILIPOVIC
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF WASHINGTON
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
Tel: (206) 553-1100
Fax: (206) 553-0120
E-mail:  Michael_Filipovic@fd.org


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  3:06-cr-00041-RRB-JDR |
| | ) | |
| Plaintiff, | ) | DEFENDANT RANES'S REPLY TO |
| | ) | GOVERNMENT'S RESPONSE IN |
| v. | ) | PARTIAL OPPOSITION TO |
| | ) | DEFENDANTS' MOTIONS FOR |
| THOMAS P. RANES, et al., | ) | DISCOVERY FILED AT DOCKETS 372 |
| | ) | AND 374 |
| Defendant. | ) | |
| _____ | ) | |

1.      **Request for Agents' Reports, Notes, Memos (Shine Request No. 4).**

The government makes the blanket claim that investigators' notes of interviews are not

"statements" under either Federal Rule of Criminal Procedure 16 or 18 U.S.C. § 3500(e)(2).  It is

well established in this circuit that government agents are required to maintain their notes of

witness interviews or risk dismissal of the criminal prosecution.  *See United States v. Riley*, 189

F.3d 802 (9th Cir. 1999) (holding agents' intentional destruction of notes of interview of

confidential informant required reversal); *also see United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976).

With respect to any rough notes or reports that the government declines to provide to defense counsel, the defendant requests that the Court conduct an *in camera* review of those notes and reports as authorized by Fed. R. Crim. P. 26.2(c) and 18 U.S.C. § 3500(b), (c) and (d). *See also United States v. Miller*, 771 F.2d 1219, 1230 (9th Cir. 1985) (finding trial court abused its discretion for failing to conduct an *in camera* examination of grand jury transcripts and government attorney's notes of an interview and that it was error for the district court simply to rely on government counsel's assertion that notes did not contain Jencks Act statements).

Because recent Ninth Circuit case law treats local and state law enforcement as the functional equivalent of federal agents under Federal Rule of Criminal Procedure 16, the government is also obligated to direct state and local law enforcement officials to maintain their rough notes and to provide both rough notes and reports to the Assistant United States Attorney so that the government can meet its discovery obligations under Rule 16. *See United States v. Fort*, 472 F.3d 1106, 1107 (9th Cir. 2007) (holding that the investigative reports of local and state police officers who investigated the crime before federal agents were involved in the investigation were to be treated as federal agents for purposes of the discovery analysis under Rule 16).

Defendant Ranes therefore respectfully requests that the Court order the government to direct all agents involved in this case (federal, state and local) to maintain all of their notes even after final reports are prepared. Secondly, with respect to reports or notes of any witness or concerning any witness interview that the government chooses not to disclose, the defendant

requests that the Court order those reports and notes be delivered to the Court for *in camera* review.

### 2.    The *Brady/Giglio* Standard.

The government's response establishes that it is employing a *Brady/Giglio* disclosure standard that is incorrect in the pretrial context and, if employed by the government, will result in non-disclosure of information and evidence that the defendant is entitled to receive. The government states, "The disclosure of evidence affecting the credibility of a witness falls within *Brady* only if the reliability of the given witness may be determinative of guilt or innocence. *Giglio*, 405 U.S. at 154." Gov't Resp. at p. 4. The government mistakenly applies an appellate standard of review for its threshold requirement of disclosure at the pretrial stage.[1] All of the case law cited by the government arose either on direct appeal or collateral attack of a conviction. Such undisclosed evidence subjects a prior conviction to reversal if it can be shown that there is a reasonable possibility that the result of the proceeding would have been different, so as to undermine confidence in the outcome. It seems obvious that this post-conviction standard does not translate well into a standard used to govern a prosecutor's disclosure obligations in advance of trial. Neither the government, nor even the Court, can know whether the material in question would establish a reasonable probability of a different outcome at a time

---

[1]The government even gets the appellate standard of materiality wrong when it argues that "each item (of exculpatory information) must be likely to have determinative impact on the guilt or punishment of the defendant." Gov't Resp. at p. 6. Thus, contrary to Supreme Court precedent, the government seems to argue that one ignores the cumulative impact of several items of exculpatory evidence during appellate review. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 454 (1995) (cumulative effect of failure to disclose multiple items of exculpatory evidence rendered verdict not worthy of confidence).

*U.S. v. Thomas P. Ranes et al.*
3:06-cr-00041-RRB-JDR                 3

when the defendant remains cloaked in the presumption of innocence, when no evidence of guilt has yet been offered at trial, and when the Court can only speculate about the quantity and quality of the evidence the government and the defense might ultimately produce at trial.

With post-trial requests, the trial court has the advantage of evaluating suppressed discovery in the context of the entire record. On the other hand, pre-trial claims must be considered in terms of abstract probabilities.

The district courts which have repeatedly faced this issue have recognized the distinction between the appellate standard of review and the much lower pretrial standard for disclosure. *See United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1200 (C.D. Cal. 1999) (rejecting the appellate standard suggested by the government in holding that "*Brady* requires disclosure of exculpatory information that is either admissible or is reasonably likely to lead to admissible evidence," and specifically directing that "**any information** that reveals **any variations** in the proffered testimony of an accomplice witness testifying pursuant to a leniency agreement is relevant to the witness's credibility and therefore must be disclosed under *Brady*," as well as "any information that reveals the nature of the negotiation process that led to the leniency agreement"); *United States v. Peitz*, No. 01-CR852, 2002 WL 226865, at *3, 2002 S. Dist. LEXIS 2338 at *7-8 (N.D. Ill. Feb. 13, 2002) (following the standards set forth in *Sudikoff*); *United States v. Carter*, 313 F. Supp. 2d 921, 924 (E.D. Wis. 2004) (agreeing with *Sudikoff* and *Peitz* that, "[i]n the pretrial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its 'materiality' at trial," because a judge cannot know what possible effect certain evidence will have on a trial not yet held and further observing that "the

*Brady* materiality standard determines prejudice from admittedly improper conduct and thus should not be considered as approving all conduct that does not fail its test.").

Given the extensive discussion in the government's response and its repeated assertion that it is only required to disclose information that in itself would be determinative of guilt or innocence, it strongly suggests that the government may take a grudgingly strict view of its obligation with respect to certain evidence or information.  It is therefore important that the district court make a ruling on this issue and direct the government as to the appropriate standard it should employ in this pretrial stage.

### 3.     Timeliness of Disclosure.

The government has sent mixed messages on the duty it has to timely disclose *Brady*/*Giglio* materials.  First, it acknowledges that it will comply with the Court's order to provide *Brady* material "as soon as practicable."  Gov't Resp. at p. 8.  It has also already provided some *Brady* material to defense counsel.  However, when it comes to specific information concerning the credibility of its witnesses, it appears to take a much more dismissive approach to both the *Brady* standard and the timeliness of its disclosures.  Effectively, the government argues that where exculpatory information would qualify as Jencks Act material as well as *Giglio* material, it does not have to disclose that information prior to trial.

The duty to disclose exculpatory information includes the obligation to supply that information at a time when it is of value to the accused.  *United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988).  While precedent suggests that the Ninth Circuit will not reverse for delayed delivery of exculpatory material if the defense is given the opportunity to avail itself of the material once delivered, *e.g.*, *United States v. Davenport*, 753 F.2d 1460 (9th Cir. 1985),

belatedly-delivered discovery may require trial delays to allow for necessary investigation. *Cf.*, *United States v. Shelton*, 588 F.2d 1242 (9th Cir. 1978). It is within the discretion of the Court to control the timing of discovery, *United States v. LacLevasseur*, 826 F.2d 158 (1st Cir. 1987), and consideration of judicial economy and efficient trial management would indicate that delivery of exculpatory evidence should occur "at the earliest feasible opportunity." *United States v. Staursko*, 729 F.2d 256, 264 (3d Cir. 1984).

Where the exculpatory evidence also qualifies as Jencks material, there is a tension between the constitutional principles announced in *Brady* and *Giglio* and the Jencks Act. Where exculpatory information fits within both categories, the tension should be resolved in favor of the constitutional principles and the evidence produced in sufficient time to permit the defendant to make effective use of that information at trial. For example, if the government has an inconsistent statement of a witness which would require the defense to subpoena another witness in order to complete the impeachment of the testifying witness or would require further investigation in order to make effective use of the inconsistency, providing this information to the defense on the eve or in the midst of trial effectively deprives the defendant of the value of this information or evidence.

In this case, the timing of the disclosure of exculpatory evidence is of significant concern to the defense because potential witnesses and evidence may be in foreign countries, such as Canada or the Ukraine, or be with witnesses who are imprisoned in institutions far outside of Anchorage, Alaska. Disclosure of *Brady/Giglio* material two weeks before trial in such circumstances may be insufficient for the defense to make effective use of that material.

If the government has a legitimate concern that relates to issues such as witness safety or classified information, there are procedures that can be followed to protect both the defendant's constitutional rights as well as the government's interest.  Specifically, the government can move the Court for a protective order with respect to specific witness statements if it has a specific safety concern that it can articulate with respect to those witnesses.

The defense therefore respectfully requests that the Court enter an order directing the government to disclose all exculpatory information and evidence at the earliest feasible opportunity.  With respect to any exculpatory information and evidence for which the government has concerns such as witness safety, it is requested that the Court direct the government to propose a reasonable protective order which would make that information useful to defense preparation for trial, thus protecting the defendant's due process rights under *Brady*, while at the same time addressing whatever interests the government may identify.

**4.      Personnel File of Law Enforcement Personnel (Shine's Request 9)**.

The government has stated that it does not oppose this request concerning a review of "all testifying federal law enforcement witnesses' personnel files."  The definition of "federal agent" has been greatly expanded by the Ninth Circuit's recent decision in *United States v. Fort, supra,* to include local police officers involved in an investigation prior to federal involvement in that investigation.  In *Fort*, the court held that these local police officers are federal agents for purposes of the work product protection of Fed. R. Crim. P. 16(a)(2) and the document disclosure provisions of Rule 16(a)(1).  Moreover, under *Kyles v. Whitley*, 514 U.S. 419 (1995), the government has an obligation to obtain exculpatory information from local and state police agencies.  Defendant Ranes requests that the *Henthorn* request include local and state agents.

**5.      Expert Reports and Data (Shine's Request 13 and Ranes's Request A)**.

The district court clearly has authority to manage discovery and the timing of discovery

for expert witnesses under Fed. R. Crim. P. 16(a)(1)(G).  This provision of Rule 16 was added by

amendment in 1993 and was "intended to minimize surprise that often results from unexpected

expert testimony, reduce the need for continuances, and to provide the opponent with a fair

opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed.

R. Crim. P. 16, Advisory Committee Notes, 1993 amendment.  The Advisory Committee Note

further explains that

> "[w]ith increased use of both scientific and non-scientific expert testimony, one of
> counsel's most basic discovery needs is to learn that an expert is expected to
> testify."  (Citation omitted.)  This is particularly important if the expert is
> expected to testify on matters which touch on new or controversial techniques or
> opinions.  The amendment is intended to meet this need by first requiring notice
> of the expert's qualifications which in turn will permit the requesting party to
> determine whether in fact the witness is an expert within the definition of Federal
> Rule of Evidence 702.

*Id*.  Furthermore, "like Rule 702, which generally provides a broad definition of who qualifies as

an 'expert,' the amendment is broad in that it includes both scientific and non-scientific experts."

*Id*.

Second, with respect to the entitlement to a summary of the expert's expected testimony,

this provision "is intended to permit more complete pretrial preparation by the requesting party."

*Id*.  Third, "and perhaps most important, the requesting party is to be provided with a summary

of the bases of the expert's opinion."  *Id.*

With these underlying principles in mind, the government's suggestion of a September

10th cut-off date is wholly inadequate under the facts and circumstances of this prosecution.

Allowing the government to wait until approximately one month before trial to provide this information to the defense will undermine not only the principles underlying this Rule 16 requirement but will likely cause havoc with defense counsel's trial preparation and the Court's ability to manage this trial in an effective manner.

The prosecution of this drug trafficking crime has morphed into a homicide prosecution within the context of a drug trafficking case. For purposes of the expert witness issue, this is significant. As the Court is well aware, homicide prosecutions typically involve forensic evidence and expert testimony on a number of topics. It also may present the need for *Daubert* hearings. For the defendant to effectively challenge any government expert testimony, he would have to retain his own expert or experts to examine the evidence, to evaluate the opinions of the government experts, to consult with counsel, and to be available for pre-trial and trial proceedings.

Unlike the government in this case, which has access to multiple government crime labs, including the FBI crime lab, the DEA crime lab, the ATF crime Lab and the Alaska and Anchorage police departments' crime labs, defense counsel must find private experts to assist. These experts are typically booked well in advance and cannot simply drop other cases that they are working on at a moment's notice.

The original Indictment in this case was returned on April 19, 2006. The Second Superseding Indictment, alleging the homicide as an overt act, was returned on December 15, 2006. The alleged homicide is stated in the Second Superseding Indictment to have occurred on June 1, 2005.

By the discovery date we suggest, June 15, 2007, more than two years will have passed since Cody's disappearance, and the government will have had almost six months since the return of the Second Superseding Indictment to work with the physical evidence and have expert analyses conducted. Requiring the government to provide the defense with a list of its expert witnesses, a written summary of their expected testimony, which includes the witnesses' opinions, the bases and reasons for those opinions and their qualifications, 90 to 120 days before the trial date is more than reasonable to the government and is absolutely essential to the defense. Moreover, the government does not dispute its ability to comply with such a requirement or this Court's authority to manage the timing of this discovery. Surprisingly, while opposing a disclosure order for June or July, it cavalierly challenges the defendants to advance the trial date to June, and then agrees to provide the necessary reports at an earlier date than that requested by defendant's motion. *See* Gov't Resp. at p. 16. This evidences no legitimate concern for opposition to the deadline defendant has requested. Therefore, it is respectfully requested that the government be directed to comply with its discovery obligation under Rule 16(a)(1)(G) by

//

//

//

//

//

//

//

*U.S. v. Thomas P. Ranes et al.*
3:06-cr-00041-RRB-JDR                    10

June 15, 2007, the date requested by Mr. Shine, and in any event no later than July 15, 2007, the

date suggested by Mr. Ranes.

   DATED this 23rd day of March, 2007.

        /s/ Michael Filipovic
        MICHAEL FILIPOVIC
        WSBA No. 12319
        First Assistant Federal Public Defender
        Attorney for Thomas P. Ranes
        Federal Public Defender
        1601 Fifth Avenue, Suite 700
        Seattle, WA 98101
        Tel. (206) 553-1100
        Fax (206) 553-0120
        Michael_Filipovic@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2007, I electronically filed the foregoing Defendant

Ranes's Reply to Government's Response in Partial Opposition to Defendants' Motions for

Discovery filed at Dockets 372 and 374 with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following: Assistant United States Attorneys

Frank V. Russo, James Barkeley and Shawn Fuller, Federal Building & U.S. Courthouse, 222

West 7th Avenue, #9, Room 253, Anchorage, Alaska 99513.


/s/ Michael Filipovic
MICHAEL FILIPOVIC
WSBA No. 12319
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Michael_Filipovic@fd.org