MICHAEL FILIPOVIC
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF WASHINGTON
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
Tel: (206) 553-1100
Fax: (206) 553-0120
Email:  Michael_Filipovic@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  3:06-cr-00041-RRB-JDR |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION TO SUPPRESS EVIDENCE OF |
| v. | ) | DEFENDANT'S TELEPHONE CALLS |
| | ) | AND EMAIL CORRESPONDENCE HAD |
| THOMAS P. RANES, et al., | ) | WHILE IN PRETRIAL DETENTION |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Thomas P. Ranes, the defendant herein, by his attorney, Michael Filipovic, Assistant Federal Public Defender for the Western District of Washington, and hereby submits the following Memorandum of Law in support of defendant Ranes's Motion to Suppress Evidence of Defendant's Telephone Calls and Email Correspondence Had While in Pretrial Detention.

//

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

Mr. Ranes has been detained for nearly one year, since April 22, 2006. Since that time, Mr. Ranes's telephone and email communications with his friends and family has been monitored by law enforcement. The government has reserved the right to seek to introduce statements made during and in these communications in Mr. Ranes's trial.

**II.   STATEMENT OF FACTS**

Following his arrest on April 22, 2006, Mr. Ranes was held at the Anchorage Jail and the Anchorage Correctional Complex West in Cook Inlet, Alaska. He was transferred from the Anchorage Correctional Complex to the Federal Detention Center in SeaTac, Washington on September 15, 2006.

While incarcerated, Mr. Ranes has contacted his friends and family via email and telephone. His ex-wife and children live in Alaska, and the rest of his family live outside the states of Washington and Alaska. Mr. Ranes was likely advised that the communications could be monitored by jail and correctional staff, but was provided with no private means of communicating with individuals outside of the institution, with the exception of his legal counsel.

The government has provided counsel with audio tapes of at least 70 telephone conversations from Alaska detention facilities, 266 calls from FDC SeaTac and 1162 pages of email from FDC SeaTac and states that it reserves the right to introduce these communications at Mr. Ranes's trial.

//

### III. ARGUMENT

#### A. Privacy and First Amendment Rights of Pretrial Detainees

The Fourth Amendment protects individuals from "unreasonable searches." U.S. Const. Amend. IV. Whether the Fourth Amendment applies to a particular case is determined by whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). This determination requires both an "'actual (subjective) expectation of privacy'" and one that, viewed objectively, "'society is prepared to recognize as reasonable.;'" Id. (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). In *Hudson v. Palmer*, 468 U.S. 517, 530 (1984), the Supreme Court held that the Fourth Amendment prohibition against unreasonable searches did not apply to prison cells. While recognizing that prisoners retain certain constitutional rights while incarcerated, the Court found the institutional interest in security so compelling that it determined that the Fourth Amendment provides no protection to any prison cell searches.

With respect to the First Amendment rights of prisoners, the Supreme Court has recognized that "'[p]rison walls do not form a barrier separating prison inmates from the protections of the constitution' ... nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 84, 94-99 (1987)). Thus, "a prison inmate retains those [constitutional] rights that are not inconsistent with his status as a prisoner [and] with the legitimate penological objectives of the correction system." *Powell v. Procunier*, 417 U.S. 817, 822 (1974). With respect to telephone privileges, courts generally agree that

inmates have a First Amendment right to some minimal level of access, although they have not reached consensus on the precise level of access required. *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986); *also see Wooden v. Norris*, 637 F. Supp. 543, 555 n. 4 (M.D. Tenn. 1986) (collecting cases).

While the Supreme Court has addressed the issue of Fourth Amendment privacy rights in the jail cell, it has not reached the Fourth and First Amendment issues presented by blanket monitoring, recording and dispersal to law enforcement agents of all verbal and written communication from a pretrial detainee.

The Ninth Circuit has addressed the Fourth Amendment concerns with respect to telephone calls, holding (1) that the pretrial detainee does not have an objectively reasonable expectation of privacy in outbound jailhouse phone calls; (2) that even if such a Fourth Amendment right existed, the detainee waived that right by signing a warning advising him that the phone calls would be monitored and taped; and (3) that there was no violation of Title III of the Omnibus Crime Control and Safe Streets Act because the monitoring fell within the law enforcement and consent exceptions to that provision. *United States. v. Van Poyck*, 77 F.3d 285, 290-292 (9th Cir. 1996).

The Ninth Circuit has not specifically addressed the interplay between the defendant's First Amendment and Fourth Amendment rights.

**B**.    **Defendant Ranes Preserves His Fourth Amendment Challenge**.

While the Ninth Circuit decision in *Van Poyck* appears to control this issue, at least with respect to the telephone calls, the Supreme Court has not extended the rule that there is no reasonable expectation of privacy in a prisoner's cell to that of prisoner communications by

telephone or email.

While a jail or a prison may have a legitimate interest in detecting illegal acts by detainees, such as requests for illegal drugs or weapons, the planning of prison escapes which may justify the occasional monitoring of detainee communications based on a minimal level of suspicion, those prison interests should not completely trump legitimate privacy expectations with respect to communication with a detainee's family and friends.  Applied to the facts of this case, it appears that the monitoring utilized by the detention facilities was simply a vehicle for passing on countless communications between Mr. Ranes and his family to the law enforcement and prosecution team prosecuting his case.

Unlike requirements under the wiretap statute, where otherwise private calls are required to be minimized, all of the communications from the detention facility appear to have been passed on to law enforcement for its inspection.

**C.    Mr. Ranes Did Not Voluntarily Consent to this Monitoring and the Retention of These Conversations and Emails.**

While it is likely that Mr. Ranes was advised of the monitoring systems in place at the Federal Detention Center and was on notice that the calls and emails may be both monitored and recorded, that by itself does not establish consent.[1]  As stated by Judge Posner:

> [K]nowledge and consent are not synonyms.  Taking a risk [that prison officials will not detect an abuse of telephone privileges] is not the same thing as consenting to the consequences if the risk materializes.  A person who walks by himself late at night in a dangerous neighborhood takes a risk of being robbed; he does not consent to being robbed.  We would be surprised at the argument that if illegal wiretapping were widespread, anyone who used a

---

[1] It is unclear what advice Mr. Ranes was given by the Alaska detention facilities.

> phone would have consented to its being tapped and would therefore be debarred from complaining of the illegality.

*United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir. 1990).

Moreover, it is well-established that a person cannot be forced to surrender one constitutional right in order to exercise another. *See Simmons v. United States*, 390 U.S. 377 (1968). In *Simmons*, the Supreme Court determined that a defendant could not be "obliged either to give up what he believed . . . to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *Id*. at 394. The Court rejected this "Hobson's choice" and explained, "In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Id*. at 391, 394.

The fundamental premise of *Simmons* -- that it is intolerable to premise the assertion of one constitutional right upon the surrender of another -- is not limited to the circumstances presented in that case. Rather, courts have consistently relied upon *Simmons* to ensure that criminal defendants are not forced to surrender one constitutional right in order to assert another. *See, e.g., Bittaker v. Woodford*, 331 F.3d 715, 723-24 (9th Cir. 2003) (habeas petitioner cannot be forced to waive attorney-client privilege in order to assert claim of ineffective assistance of counsel); *United States v. Pavelko*, 992 F.2d 32, 34 (3d Cir. 1993) (financial statements made by indigent defendant in effort to secure counsel cannot be used against defendant at trial); *United States v. Harris*, 707 F.2d 653, 662-63 (2d Cir. 1983) (same); *United States v. United States Currency*, 626 F.2d 11, 14-15 (6th Cir. 1980) (defendant cannot be forced to waive right against self-incrimination in order to exercise right to challenge forfeiture proceeding); *Pedrero v. Wainwright*, 590 F.2d 1383, 1388 n.3 (5th Cir. 1979) (defendant cannot be forced to waive right

against self-incrimination in order to exercise right to raise incompetency or insanity claim at arraignment).

Most recently, in *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), the Ninth Circuit considered whether a district court erred in admitting evidence obtained during a consent search where the defendant was forced to consent to otherwise unreasonable searches and seizures in order to gain pretrial release.[2] 450 F.3d at 865-66. Relying upon the notion that a defendant cannot be forced to waive a constitutional right in order to exercise another right or to gain an available benefit, the Ninth Circuit determined the evidence obtained during the "consent" search was inadmissible because the consent was obtained only by withholding another right. *Id.* at 867. The court recognized that the rule prohibiting the conditioning of the exercise of one right on the surrender of another "is especially important in the Fourth Amendment context." *Id.*

Here, Mr. Ranes was forced to surrender his Fourth Amendment right to be free from unreasonable searches and seizures in order to exercise his First Amendment right to communicate with his friends and family. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) ("We 'sensibly and expansively' define the First Amendment right [to freedom of speech] as the right to communicate with persons outside prison walls."). This conditioning of constitutional rights violated Mr. Ranes's Fourth Amendment rights, and the fruits of the searches must be suppressed. *Scott*, 450 F.3d at 867.

//

---

[2]The court did not determine whether the defendant had a constitutional right to pretrial release, but determined the evidence must be suppressed even if he had no right to pretrial release. *Scott*, 450 F.3d at 866 n.5.

### D.     The Monitoring in This Case Violated the Wiretap Statute

Title 18 United States Code Section 2511 makes it unlawful to intercept or procure another person to intercept or endeavor to intercept any wire, oral or electronic communication and forbids the intentional use of such communications. Title III generally prohibits the intentional interception of telephone conversations in the absence of a court order and this prohibition extends to prison communications. *United States v. Amen*, 831 F.2d 373 (2d Cir. 1987).

In *Van Poyck*, the Ninth Circuit rejected a wiretap challenge to the use of a pretrial detainee's tape recorded telephone calls. The court relied on two exceptions to Title III: (1) § 2510(5)(a), which excludes the use of such equipment and devices by investigative or law enforcement officers in the ordinary course of their duties; and (2) § 2511(2)(c), which excludes communications where one of the parties to the communication has given prior consent.

If the government relies on the ordinary course of duties exception to justify this intrusive practice with respect to Mr. Ranes, it must prove this at an evidentiary hearing. Similarly if the government relies on the consent exception, it has the burden of proving that this exception applies under the facts of this case. *See United States v. Tangeman*, 30 F.3d 950, 952 (8th Cir. 1994). Since consent and knowledge are not synonyms, the government must prove actual consent.

Given the large volume of tape recordings and emails that have been forwarded to defense counsel, the long period of time over which this monitoring, taping and recording have taken place, and because all of these tapes and emails appear to have been forwarded from the

detention officials to the law enforcement agents charged with investigating and prosecuting Mr. Ranes, serious questions are presented whether the monitoring, the recording and the transmittal of this information falls within these two exceptions.

In sum, the Title III wiretap prohibitions apply to prison communications and while there may be exceptions to the prohibitions created by Title III, those exceptions must be determined to exist on a case-by-case basis. The government should be required to present evidence at a hearing as to whether the facts in this case support application of those exceptions.

## IV. CONCLUSION

For the foregoing reasons, the government should be precluded from offering evidence of telephone conversations and email correspondence made from the Anchorage Jail, Anchorage West Complex at Cook Inlet and at the SeaTac Federal Detention Center.

DATED this 16th day of April, 2007.

/s/ Michael Filipovic
MICHAEL FILIPOVIC
WSBA No. 12319
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Michael_Filipovic@fd.org

CERTIFICATE OF SERVICE

      I hereby certify that on April 16, 2007, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE OF DEFENDANT'S TELEPHONE CALLS AND EMAIL CORRESPONDENCE HAD WHILE IN PRETRIAL DETENTION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Frank V. Russo, James N. Barkeley and Shawn C. Fuller, Assistant United States Attorneys, Federal Building & U.S. Courthouse, 222 West 7th Avenue, #9, Room 253, Anchorage, Alaska 99513.

      /s/ Michael Filipovic
MICHAEL FILIPOVIC
WSBA No. 12319
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Michael_Filipovic@fd.org