MICHAEL FILIPOVIC
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF WASHINGTON
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
Tel: (206) 553-1100
Fax: (206) 553-0120
E-mail: Michael_Filipovic@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 3:06-cr-00041-RRB-JDR |
| | ) | |
| Plaintiff, | ) | AFFIDAVIT OF MICHAEL |
| | ) | FILIPOVIC IN SUPPORT OF |
| v. | ) | RESPONSE TO GOVERNMENT'S |
| | ) | MOTION TO STRIKE DEFENDANTS' |
| THOMAS P. RANES, et al., | ) | MOTIONS |
| | ) | |
| Defendant. | ) | |
| | ) | |

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

Michael Filipovic, being first duly sworn upon oath, deposes and states as follows:

1. Mr. Ranes was essentially without representation of counsel from the time of his arraignment on the original indictment until August 11, 2006, when I filed a Notice of Appearance after having been appointed by the Court to represent Mr. Ranes. *See* Dkt. No. 199. While Mr. Murtagh was counsel of record before that date, and had received some of the

discovery in this case, he was acting as more of a "friend of the court" than as counsel preparing pretrial and trial matters for Mr. Ranes.

2. When I entered the case, trial was scheduled for February 12, 2007; the deadline for filing motions to suppress evidence of searches or arrests was set for September 29, 2006; and the due date for wiretap motions was set for November 15, 2006. Given the complexity of this case, it was apparent that I could not effectively prepare pretrial motions in the time frame originally set by the Court, so I filed an unopposed motion to extend those deadlines on August 30, 2006, with suggested due dates based on the then scheduled trial date of February 12, 2007. See Dkt. No. 217. The Court never ruled on this motion.

3. From September 20, 2006, through October 13, 2006, I was out of the country on a leave that had been scheduled months before my notice of appearance in this case. I returned to my office on October 16, 2006, prepared to focus my attention on Mr. Ranes's case for the next several weeks and months. However, on October 20, 2006, I was involved in an accident in which I sustained broken vertebrae and broken bones in my shoulder that required hospitalization and then surgical intervention. I returned to work on a part time basis on November 7, 2006, but was unable to travel outside the Western District of Washington until January 2007. On January 11, 2007, a status conference was held at which time the Court ruled on the defendant's motion to continue the trial date and ordered the trial continued to October 15, 2007. Dkt. No. 347. The next day counsel for defendant Shine, with my agreement on behalf of Mr. Ranes, filed a Motion to Continue Motions Deadline. Dkt. No. 355.

4. In determining whether to file pretrial motions in a federal criminal case, I have to consider the following factors:

      (a)    the viability of the motion, which requires detailed review of the discovery materials and the law;

      (b)    with respect to suppression motions, whether the evidence sought to be suppressed is harmful to the defense case; and

      (c)    the effect the filing of pretrial motions will have on settlement efforts with the government and sentencing guidelines determinations.

Specifically, under the present version of USSG § 3E1.1(b), the defendant can only get a third point for acceptance of responsibility if the government moves for reduction because the guilty plea permitted it to avoid preparing for trial and permitted the government and the court to allocate their resources efficiently. It has been my experience that once defendants file pretrial motions and the government responds, the government will refuse to make the motion for the third point for acceptance of responsibility. Given the guideline range Mr. Ranes would likely face in this case, one offense level is the difference between one to two years of additional imprisonment.

    5.    In September 2006, it appeared as if this case would settle and thus I was hesitant to unnecessarily file any pretrial motions. By the time I returned to the office in mid-November, the dynamics had changed dramatically, with the government now alleging that Mr. Ranes and Mr. Shines were responsible for the homicide of Tom Cody.

    6.    The discovery in this case has been voluminous, and the process by which it has been provided has not been as problem-free as represented by the government in its motion. Attached is a chart giving a brief review of the discovery and the dates we received it. The

discovery had to be reviewed, organized and indexed so that it could be accessible for use by the defense. Moreover, counsel had to make two trips to Anchorage, Alaska, and spent several days reviewing physical evidence that the government had obtained in its investigation of this case.

7. Discovery is still not complete. In fact, on the date that this motion is being filed, counsel received another CD with another 100 pages of documents and is still awaiting additional discovery materials.

8. In preparing the wiretap motion, it took approximately 65 hours to review the discovery that was directly relevant to the wiretaps and to research and write the motion. Part of the process in preparing the motion was an assessment of other potential wiretap issues which were reviewed, researched and rejected – specifically, a minimization argument.

9. Furthermore, with respect to overall trial strategy, it is important for defense counsel to evaluate the harmfulness of the evidence sought to be suppressed. In the case at bar, that dynamic changed with the government's second superseding indictment which alleged the homicide of Tom Cody. Part of the government's allegation was that a potential motive for the homicide was a large sum of money that had been left behind in Canada shortly before Mr. Cody's disappearance. Some of the wiretap calls allegedly referenced that sum of money and would constitute some circumstantial evidence supporting the government's theory on the homicide.

//

//

//

10. I have acted with due diligence in my representation of Mr. Ranes with respect to obtaining, indexing and reviewing the discovery materials and with respect to the preparation of pretrial motions.

_____
MICHAEL FILIPOVIC

SUBSCRIBED AND SWORN to before me this 27th day of April, 2007.



_____
Mary E. Pekich, Notary Public in and for the State of Washington, residing at Seattle.
My commission expires 12/23/08.

# ATTACHMENT

Ranes - Discovery Received Chart

| Date | No. of CDs | Detail |
|---|---|---|
| 8/10/2006 | 4 | 2,978 wiretap calls of varying lengths<br>3,749 pages of documents |
| 8/19/2006 | 9 | 3:57:51 hours of audio<br>58:43 minutes of video |
| 9/1/2006 | 301 (incl. 12 duplicates) | 4,828 JPEG images<br>32:31:38 hours of audio<br>3 duplicate CDs containing 2,978 wiretap calls of varying lengths<br>301:09:18 hours of video<br>5,729 pages of documents (3,749 duplicates) includes LINE SHEETS<br>Excel spreadsheets of varying sizes on 2 CDs |
| 9/11/2006 | 4 | 20:40:46 hours of video |
| 1/3/2007 | 8 | 209 JPEGs<br>4 hours of audio<br>1 hour of video<br>200 pages of documents |
| 1/10/2007 | 2 | 27 JPEGS<br>22 audio files |
| 1/12/2007 | 17 | 100 JPEGs<br>1 hour of audio<br>20 hours of video<br>7 documents |
| 1/17/2007 | 3 | 500 JPEGs<br>250 pages of documents |
| 1/29/2007 | 1 | 2000 JPEGs of documents |
| 2/7/2007 | 2 | 350 JPEGs |
| 3/24/2007 | 4 | 700 pages<br>4 maps<br>181 audio |

Attach., p. 1

| 3/30/2007 | 4 (+7 of Encase materials on Cody's computer) 20 duplicate CDs | 13 JPEGs  6.5 hours of video  Cody's laptop forensics CD |
|---|---|---|

Attach., p. 2