NELSON P. COHEN
United States Attorney

THOMAS C. BRADLEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone (907) 271-5071
Fax (907) 271-1500
Email thomas.bradley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) | Case No. 3:06-cr-00041-RRB |
| ) | |
| Plaintiff,   ) | GOVERNMENT'S RESPONSE |
| ) | IN OPPOSITION TO |
| vs.            ) | DEFENDANT RANES' |
| ) | MOTION TO SUPPRESS |
| THOMAS P. RANES,            ) | TELEPHONE CALLS AND |
| ) | EMAIL CORRESPONDENCE |
| Defendant.   ) | WHILE IN PRETRIAL |
| ) | DETENTION |
| ) | |

## INTRODUCTION

Defendant Thomas M. Ranes moves to suppress the introduction of statements he made while speaking on jail telephones and sending emails from jail facilities. It is hornbook law that the defendant has no reasonable expectation of privacy in these communications under the Fourth Amendment, and his attempt to

craft a First Amendment argument for protection has no basis and should fail.

## THE FACTS

Defendant Thomas Ranes has been incarcerated since his arrest in April 2006 on drug smuggling and money laundering conspiracy charges. He has been detained both in an Alaska Department of Corrections facility in Anchorage (ACC WEST), and at a Federal Bureau of Prisons Federal Detention Center in Washington state (FDC SeaTac). These facilities prominently advertise the fact that communications on jailhouse telephones are not private in any way.[1] Inmates are constantly reminded of this fact, by placards placed above the phones, by written notices they receive upon intake, and by actual voice recordings at the beginning of outgoing calls that again notify the caller that the conversation may be monitored and will be recorded.

For example, defendant Ranes signed Bureau of Prisons Form BP-S408.058, Acknowledgment of Inmate, on September 15, 2006 which states in pertinent part:

---

[1] There are, of course, exceptions to these rules for communications between defendants and their counsel. Meetings, telephone calls, and written correspondence between defendants and counsel are privileged, and all detention facilities have procedures by which these communications are not intruded on by corrections staff. These type of communications are not at issue in this case.

> The Bureau of Prisons reserves the authority to monitor (this includes recording) conversations on any telephone within its institutions, said monitoring to be done to preserve the security and orderly management of the institution, and to protect the public. An inmate's use of institutional telephones constitutes consent to this monitoring. A properly placed call to an attorney is not monitored. You must contact your unit team to request an unmonitored attorney call.
>
> I have read...the above notification on the monitoring of inmate telephone calls. I understand that telephone calls I make from institution telephones may be monitored and recorded

The form was signed by defendant Ranes and dated September 15, 2006. A copy is attached as Government Exhibit A.

At the ACC-West facility, signs are prominently posted above telephones, warning that calls are "monitored and/or recorded" except for attorney calls, which may only be monitored when authorized by law. (Government Exhibits B & C).

The pervasive use of email has also reached correctional institutions, and these communications are treated in a similar manner to telephonic communications. Effective July 10, 2006, all inmates at FDC SeaTac were given access to email communication. Inmates are permitted to set up email accounts through a program called TruLincs, which the Bureau of Prisons has installed at various institutions throughout the country. All recipients must first respond to an initial email asking if they wish to receive an email from a federal inmate.

Recipients have the ability to accept or block all future electronic communication from that inmate.

This program allows inmates to submit a list of up to 30 email addresses with which they wish to communicate. They are permitted to both send and receive emails. The cost for this program is 5 cents per minute of computer use. There are computers located in each housing unit which are designated solely for email use. Inmates do not have access to the World Wide Web. Inmates do not have the capacity to download any attachments to the emails, nor are they permitted to print the emails.

All email communication is monitored and reviewed, just as with telephone calls placed by inmates. While inmates are permitted to add attorneys to their email lists, any communication is subject to review and therefore not confidential, just as telephone calls placed by inmates on the monitored phone system.

At this time there is no capacity to provide inmates with unmonitored email access for the purpose of confidential communication with their attorneys. The Federal Public Defender's Office is not participating in TruLincs at their request.

## THE LAW

*PRIVACY*

The Fourth Amendment prohibition against unreasonable searches and

seizures applies only when the person who seeks its protection can claim that a legitimate expectation of privacy has been violated by government action. The two-pronged analysis first looks at whether the citizen had a subjective expectation of privacy, and then considers whether society is prepared to recognize that expectation as reasonable. *Katz v. United States,* 389 U.S. 347 (1967); *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991).

The defendant's memorandum acknowledges that Supreme Court and Ninth Circuit case law has traditionally upheld a lowered expectation of privacy for prisoners. Beginning with *Procunier v. Martinez*, 416 U.S. 396 (1974), the Court has affirmed the fact that inmates do retain some constitutional rights[2] while acknowledging that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" and that "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* at 404-405.

Following this line of reasoning, the Court has attempted to apply a standard

---

[2]E.g., inmates have the right to be free from racial discrimination, *Lee v. Washington*, 390 U.S. 333 (1968); and prisoners retain the constitutional right to petition the government for the redress of grievances, *Johnson v. Avery*, 393 U.S. 483 (1969).

question: "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives...." *Turner v. Safley*, 482 U.S. 78, 87 (1987)(upholding ban on inmate-to-inmate correspondence). The resulting limits or prisoner rights are significant. See, e.g., *Pell v. Procunier*, 417 U.S. 817 (1974)(rejecting inmate First Amendment challenge to rule banning face-to-face media interviews); *Bell v. Wolfish*, 441 U.S. 520 (1979)(upholding prison rule regulating receipt of hardcover books against First Amendment challenge); *Block v. Rutherford*, 468 U.S. 576 (1984)(upholding ban on contact visits). The black letter rule, as explicitly stated in *Turner v. Safley*, is that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 88.

### *TELEPHONE CALLS*

The leading Ninth Circuit case on the issue of inmate telephone monitoring, cited by the defense, appears to leave no room for the defendant's argument for Fourth Amendment protection for his phone conversations. *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996). Van Poyck, an accused bank robber, made incriminating statements on an institutional telephone at the Metropolitan Detention Center (MDC) in Los Angeles, and later sought to have the statements

suppressed. *Id.* At 287. He signed a form similar to the one signed by defendant Ranes in this case, and identical language from the form appeared above the telephones, warning that "The Bureau of Prisons reserves the authority to monitor conversations on the telephone. Your use of institutional telephones constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored." *Id.*

After restating the *Katz* standard, the Ninth Circuit held that the defendant had neither an actual subjective nor a reasonable objective expectation of privacy in his calls from the facility. "Although Van Poyck claims he had a subjective expectation of privacy in the calls, the district court concluded that Van Poyck knew of MDC's policy before he made his first phone call on May 25. If he knew MDC was listening, it is hard to believe he thought his calls were private." *Id.* at 290. As to the second prong, the circuit was equally dismissive of the defendant's claim. "Even if Van Poyck believed that his calls were private, no prisoner should reasonably expect privacy in his outbound telephone calls," and went on to cite a number of precedents establishing the reduced (but not nonexistent) privacy expectations society is willing to afford jail inmates. *Id* at 290-91.

The *Van Poyck* court stated unequivocally that "any expectation of privacy

in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls." *Id.* at 291. The court then clearly stated that, "[a]ssuming that the Fourth Amendment were triggered, institutional security concerns justify such recordings and render them reasonable for Fourth Amendment purposes." *Id.*

> As to the issue of consent the court held that
>
> Van Poyck consented to the taping of these phone calls. The district court concluded that Van Poyck consented to the recordings because he (1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings. Because consent vitiates a Fourth Amendment claim, Van Poyck's Fourth Amendment claim independently fails on this ground.

*Id.*

The court also rejected Van Poyck's attempt to seek the protection of the wiretap statutes, which Ranes seeks here. The *Van Poyck* opinion clearly states that Title III exempts the routine interception of outgoing jail calls, joining other circuits that have so held and stating that "the law enforcement exception applies in this Circuit to MDC's routine taping policy." *Id.* at 292.

Finally, the court applied the facts surrounding the inmate's consent to the Title III claim, and found that consent both occurred and removed the possibility

of any Title III protection. The court held that the forms and signs provided to Van Poyck resulted in sufficient notice that his use of the phones established his implied consent to the monitoring. *Id.*

The defendant cites a Second Circuit case for the proposition that Title III protection can extend to prison calls, relying on *United States v. Amen*, 831 F.2d 373 (2nd Cir. 1987). Although this is literally correct, defendant's reliance on this case is misplaced. In fact, in reaching its decision in *Van Poyck*, the Ninth Circuit relied on *Amen*, citing its facts and finding consent under circumstances that were "nearly identical" to those in *Amen*. 77 F.3d at 292.

Although the *Amen* court did hold that Title III was implicated, it unequivocally stated that prison inmates have no reasonable expectation of privacy, that monitoring outgoing jail calls did not violate the Fourth Amendment, and that notice was the equivalent of implied consent. 831 F.2d at 379.

*E-MAILS*

Although there is no established jurisprudence addressing the privacy of inmate emails, the best analogous area would seem to be the treatment of inmate mail by the courts. As acknowledged in the cases discussed *supra*, and as emphasized by the defendant's memorandum of law, the courts have certainly entertained "prisoners' rights" cases and have carefully tried to both preserve

inmates' rights to address constitutional concerns and the institutions' need to maintain order in what is, after all, *prison*.

Early in the last century, the Supreme Court held that offering at trial incriminating letters written by a prison inmate did not violate the Fourth Amendment. *Stroud v. United States,* 251 U.S. 15 (1919). Appellate courts have followed this guidance. *See, e.g., Stow v. Grimaldi,* 993 F.2d 1002, 1004-05 (1st Cir.1993) (practice of requiring nonprivileged outgoing mail to be submitted for inspection in unsealed envelopes does not violate prisoners' constitutional rights); *Smith v. Delo,* 995 F.2d 827, 830 (8th Cir.1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *United States v. Whalen,* 940 F.2d 1027, 1034-35 (7th Cir. 1991)(because prison officials are permitted to examine inmate mail to ensure that the mail does not interfere with the orderly running of the prison, contain threats, or facilitate criminal activity, there is no expectation of privacy in mail that inmates are required to leave unsealed); *United States v. Kelton,* 791 F.2d 101, 103 (8th Cir.1986)(prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail); *Smith v. Shimp,* 562 F.2d 423, 426-27 (7th Cir.1977) (reasoning that when a pretrial detainee sends non-privileged mail, he knowingly exposes same to possible inspection by jail

officials and consequently yields to reasonable search and seizure); *United States v. Baumgarten,* 517 F.2d 1020, 1028 (8th Cir. 1975), holding that, under circumstances where prisoner knew of official policy of reading prisoners' outgoing and unsealed mail, prisoner cannot say the state gained access to contents of a letter by unlawful search and seizure).

## ARGUMENT

In this case, the defendant made phone calls from jail facilities, and sent emails from a jail computer, with full knowledge that the communications could and would be monitored and recorded. The monitoring is necessary to preserve security in the facilities, to prevent further crimes or witness intimidation by inmates, and is done with the full knowledge of the inmates. Recordings remind them at the beginning of each call. Signs hang above the phone banks.

This case does not involve surreptitious, unauthorized eavesdropping by government officials in a place where a citizen can subjectively expect and society is readily prepared to acknowledge such a privacy right. The defendant was not at home or at work or in his car, talking to his friends on a cell phone or sending emails on his home computer.[3] He was in *a jail.* Talking on a phone plastered

---

[3] Actually, he *was* earlier in the investigation. The interception of those communications was court-authorized, and is the subject of other motions in this case.

with warning signs, after being advised in writing that his calls were subject to monitoring, and faced with reminders each time the warning recording was played. He had no subjective, good faith belief that no one was listening or taping his calls. He had no objective privacy interest that our society is willing to provide, given the competing interest of maintaining institutional discipline and the clearly lower privacy rights enjoyed by jail inmates vis-a-vis free members of society.

The defendant's attempt to somehow craft a First Amendment remedy also fails. Nothing in the recording infringes on his ability to share his speech with others. The First Amendment famously protect the *public* expression of free ideas. The defendant's freedom to make statements, both spoken and in writing, was not infringed. He had a right to make the admissions, even if he now regrets making them. And the government now has the right to use those statements against him in court.

// //

// //

// //

// //

// //

// //

RESPECTFULLY SUBMITTED this 11th day of May, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Thomas C. Bradley
THOMAS C. BRADLEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone (907) 271-5071
Fax (907) 271-1500 (fax)
Email thomas.bradley@usdoj.gov