NELSON P. COHEN
United States Attorney

THOMAS C. BRADLEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone (907) 271-5071
Fax (907) 271-1500
Email thomas.bradley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00041-RRB |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE |
| | ) | IN OPPOSITION TO |
| vs. | ) | DEFENDANT RANES' |
| | ) | MOTION TO SUPPRESS |
| THOMAS P. RANES, | ) | SEARCH WARRANT |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

COMES NOW the United States of America, through undersigned counsel, and files its opposition to defendant's motion to suppress evidence seized pursuant to search warrants. The challenged searches were of a Yahoo email account, a Hotmail email account, and a Dell computer. The motion should be denied because the warrants were supported by probable cause, and because there was no

bad faith on the part of the agent involved.

## FACTS

The affidavit in support of the search warrant cited several factors that, in Special Agent Talvoliero's experience and training, and *taken as a whole,* were significant indicators that the email accounts and the computer contained evidence of criminal activity. These included:

1. A summary statement of the investigation, alleging that the Ranes organization was smuggling between 200 and 300 pounds of marijuana, along with ecstasy, every five to six weeks.

2. The fact that telephones used by Ranes were the subject of court-authorized electronic monitoring.

3. The fact that Ranes and others were indicted by a grand jury and charged with drug conspiracy and money laundering offenses.

4. The fact that approximately 347 pounds of marijuana was seized at the same time and place where Ranes and others were arrested on the indictment.

5. The fact that financial records showed nearly $300,000 in cash deposits to Ranes' business account during an eight month period in 2004, with many of the transactions appearing to have been structured to avoid currency reporting requirements.

6. The fact that large international wire transfers totaling over $200,000 were made from the Ranes' business account to overseas accounts in Ukraine controlled by a fugitive felon.

7. The statement of a cooperating defendant that a shipment of marijuana and ecstasy was seized by Canadian authorities, including details of how the drugs were packaged, which was corroborated by information received from Canadian law enforcement.

Specific information with respect to the Yahoo account included:

8. The statement by the cooperating defendant that Ranes routinely used his computer to access a specific Yahoo email account in order to communicate with his co-conspirator and supplier, an Australian living in Canada.

9. The corroboration of this by Agent Tavoliero, based on transcripts and audio recordings of intercepted telephone calls between Ranes and a man with an Australian accent.

10. An intercepted conversation between Ranes and a coconspirator wherein the coconspirator admitted sending digital photos believed to be of the truck used to smuggle the 347 pounds of marijuana seized to Ranes' message box, referring to an email account.

In addition to the above, specific information with respect to the Hotmail account included:

11. An intercepted call between Ranes and the wife of the man arrested with the aforementioned seizure in Canada, wherein Ranes provided the address of his Hotmail internet email account.

In addition to the above, specific information with respect to the Dell personal computer included:

12. The fact that a Dell computer was seized from Ranes' office pursuant to a search warrant.

13. The affiant's opinion, based on his extensive experience as a customs, money laundering, and narcotics investigator, that a record of email transmissions would be preserved on the computer.

## LAW

The case law surrounding the Fourth Amendment strongly prefers searches pursuant to warrants, as opposed to warrantless searches, and the courts consistently urge law enforcement officers to present facts to a "neutral and detached magistrate" for determination of probable cause. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). Probable cause refers to probabilities, not certainties, and is a "fluid concept" to be assessed in light of the total circumstances of the case. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There is no rigid, fixed standard as to what facts constitute "probable cause," and each case must be considered on its own facts, with the court using "common sense." *Gates*, 462 U.S. at 238; *United States v. Hay*, 231 F.3d 630, 634 n.4 (9th Cir. 2000).

The fact that a defendant has been indicted may be considered by a magistrate judge in determining probable cause to search, although the fact of indictment is not alone sufficient, given that probable cause that a defendant committed a crime does not necessarily equate to probable cause to search a particular location. *United States v. Seybold*, 726 F.2d 502, 504-05 (9th Cir. 1984); *United States v. Rubio*, 727 F.2d 786, 794-95 (9th Cir. 1983); *United States*

v. *Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981).

The amount of weight that should be accorded information from an informant or cooperating witness depends on the basis of the informant's knowledge. *Gates,* 462 U.S. at 238 (anonymous informant); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986). Corroboration of an informant's statement by law enforcement is also a factor. *United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001)(upholding issuance of search warrant based in part on statement of informant who later admitted he lied to police, but reversing conviction on other grounds). A statement made against penal interest can also serve to enhance credibility. *United States v. Harris*, 403 U.S. 573, 583-84 (1971).

While warrantless searches are presumed unreasonable absent narrow, "well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357 (1968), searches conducted with warrants are presumed valid, and are routinely upheld in the absence of bad faith by the officers, even if probable cause is later found to be lacking. *United States v. Leon*, 468 U.S. 897, 920 (1984). The court need not even address the existence of probable cause, and may immediately consider the issue of good faith and reasonable reliance by the officers. *Leon*, 468 U.S. at 923-24; *United Stats v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994).

Reliance on a warrant fails to be "objectively reasonable" in cases where the affidavit was deliberately or recklessly false, if a magistrate failed to act objectively, if the affidavit essentially lacked facts supporting probable cause, or if the warrant was extraordinarily facially deficient. *Leon*, 468 U.S. at 922-23.

## ARGUMENT

The factors relied on in the affidavit are commonly accepted in the courts of the United States. While none standing alone is sufficient, they can combine to create the circumstances necessary to support a finding of probable cause.

The background of the investigation, the amount of drugs and money involved, and the long time period covered serve to bolster the probable cause finding in two ways. First, a case of this scope is exactly the type of case, both in the agent's experience and under common sense, that would tend to support the existence of computer and email records. While a one-time undercover drug buy does not in itself provide any suggestion of electronic communication evidence, a large-scale international drug smuggling and money laundering conspiracy spanning several years would by necessity require such communications in this day and age. Second, the evidence of the long-running activities serves to defeat the defendant's claim that information was "stale." This was an ongoing criminal enterprise, with abundant evidence that it had both been active for years and was

active on the day the defendant was caught with the final 347 pound load.

The cooperating defendant's statement included information regarding a shipment of drugs seized in Canada, including details as specific as the fact that ecstasy was concealed in the head of a doll. This was corroborated by law enforcement in Canada. The informant's statements regarding the Australian supplier were also corroborated by telephone intercepts. The statements of the cooperator appear to be based on personal knowledge. The statements are clearly against penal interest, based on the fact that the cooperator had been "arrested on April 22, 2006, for his participation in the illegal activities" of the drug conspiracy. Defense Appendix A at paragraph 15.

The cooperator stated that the Australian was a drug supplier, and very particularly described the process by which Ranes and the source used an email account to communicate surreptitiously. He provided the email address. The fact that one of the Canadian sources was Australian and spoke with a heavy accent was established independently, based on actual monitored phone calls between Ranes and the Australian.

The statement by the defendant to the wife of the arrested smuggler included his specific identification of the defendant's email account at Hotmail, and seems an open invitation for her to communicate with him about the topic of

their discussion, which was her husband's arrest for smuggling drugs that were destined for Ranes. Likewise, the information about photos of the smuggling truck being sent to the "message box" is a clear reference to electronic mailboxes and the now routine practice of sharing digital photos over the internet.

Finally, the court could properly take note that a grand jury had determined that there was probable cause that Ranes engaged in drug smuggling and money laundering. While probable cause to indict is not the same as probable cause to search, it does establish the requirement that probable cause that a crime was committed existed at the time the warrant was issued. Combined with the specific evidence that Ranes was using internet email accounts and a computer to communicate with coconspirators, sufficient probable cause existed for the issuance of the warrants.

Certainly, the magistrate judge and the agent believed that there was sufficient probable cause, and in the absence of any evidence of bad faith, the searches and seizures should be upheld.

## CONCLUSION

In summary, the facts in the affidavit constituted probable cause, and the agent acted properly in disclosing all important facts to the court. The warrant was properly issued. The agent relied on it in good faith. There are insufficient

grounds to suppress the fruits of the lawfully authorized search, and the defendant's motion should be denied.

RESPECTFULLY SUBMITTED this 11th day of May, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney


s/ Thomas C. Bradley
THOMAS C. BRADLEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone (907) 271-5071
Fax (907) 271-1500 (fax)
Email thomas.bradley@usdoj.gov