MICHAEL FILIPOVIC
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF WASHINGTON
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
Tel: (206) 553-1100
Fax: (206) 553-0120
E-mail: Michael_Filipovic@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 3:06-cr-00041-RRB-JDR |
| | ) | |
| Plaintiff, | ) | DEFENDANT RANES'S RESPONSE TO |
| | ) | GOVERNMENT'S REQUEST FOR MR. |
| v. | ) | RANES'S HANDWRITING EXEMPLAR |
| | ) | |
| THOMAS P. RANES, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Thomas P. Ranes, the defendant herein, by his attorney, Michael Filipovic, Assistant Federal Public Defender for the Western District of Washington, and hereby responds to the government's motion requesting the Court to order a handwriting exemplar. The defendant does not object to Mr. Ranes providing handwriting samples in the presence of defense counsel by means of copying from a prepared text, but objects if the government proposes obtaining these samples by verbally dictating the text to Mr. Ranes, which would then require Mr. Ranes to provide a spelling test in addition to a handwriting exemplar. It is

requested that Mr. Ranes be provided with the spelling of the words he is asked to write. Spelling has no significance or relevance to a handwriting expert's analysis of the defendant's penmanship and the suspect document. A compelled spelling test violates Mr. Ranes's Fifth Amendment right to be free from compelled testimonial self-incrimination.

**ARGUMENT**

    **A.**    **The Fifth Amendment Issue**

It is well established that compelling a handwriting exemplar for the purpose of comparing a defendant's penmanship to a suspect document is not within the Fifth Amendment privilege protecting communications. *Gilbert v. California*, 388 U.S. 263, 266-67 (1967). The Ninth Circuit Court of Appeals has also upheld the introduction into evidence of misspellings that occur during the giving of a handwriting exemplar which were similar to misspellings contained in a suspect document. *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976). The Court in *Pheaster* rejected the defendant's Fifth Amendment objection to the admissibility of the handwriting exemplar.

At first blush the *Pheaster* decision appears to support the no spelling limitation on the government's request. However, a close examination of the facts of *Pheaster* and subsequent cases addressing similar issues reveals that there is an important Fifth Amendment distinction between cases where defendants claim the protection of the Fifth Amendment prior to a compulsion order and those where the Fifth Amendment claim is first made in legal proceedings **after** the exemplar has been provided. *Compare United States v. Pheaster, supra*, and *United States v. Matos*, 990 F. Supp. 141, 145 (E.D.N.Y.

1998) (where Fifth Amendment claim first raised as objection to admissibility at trial, motions to suppress results properly denied); *with United States v. Campbell*, 732 F.2d 1017 (1st Cir. 1984); *United States v. Kallstrom*, 446 F. Supp. 2d 772 (E.D. Mich. 2006); *United States v. Wade*, 1995 WL 464908 (S.D.N.Y. August 4, 1995) and *United States v. Watkins*, 1996 WL 712665 (D. Colo. 1996) (Fifth Amendment claim was made prior to taking or attempting to take samples and therefore Fifth Amendment relief was granted).

*Pheaster* does not control because it involved an after-the-fact objection to the admissibility of a handwriting exemplar for the purpose of showing similar spelling mistakes, while Mr. Ranes's case involves a Fifth Amendment objection made **prior to the taking of the handwriting exemplar**.

*United States v. Matos*, 990 F. Supp. 141, 145 (E.D.N.Y. 1998) which reached the same result as *Pheaster*, clearly analyzed the issue by making this distinction. The district judge in *Matos* denied suppression "[b]ecause the defendant did not claim the Fifth Amendment privilege at the time the handwriting exemplars were given, [and thus was] foreclosed from invoking the privilege in order to suppress the handwriting exemplars." In reaching this result, the Court relied on the well established principle that,

> Under ordinary circumstances, in order for a witness to avail himself of the protection of the Fifth Amendment, "he must claim it or he will not be considered to have being 'compelled' within the meaning of the Amendment." *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 87 L.Ed. 376 (1943).

However, before reaching this result, the *Matos* court first determined that "spelling is the result of the operation of a person's mind, the expression of which generally falls within

the Fifth Amendment's protection." 990 F. Supp. at 144.

*Matos* relied on the two post-*Pheaster* cases which granted Fifth Amendment relief from a compelled spelling test where the Fifth Amendment claim was raised before the exemplar was obtained. *United States v. Campbell*, 732 F.2d 1017 (1st Cir. 1984); *United States v. Wade*, 1995 WL 464908 (S.D.N.Y. August 4, 1995). In *Campbell*, the First Circuit found prejudicial error where the government was permitted at trial to point out that the defendant had defied a court order to provide handwriting samples without first spelling the words for the defendant, finding that it violated his Fifth Amendment privilege. The *Campbell* court stated, "spelling is an intellectual process as distinguished from the pure physical habit or characteristics that make handwriting demandable." *Id.* at 1022. In *Wade*, the district court denied the government's motion to compel the defendant to provide handwriting samples of dictated material, finding that such samples would reveal not only the defendant's penmanship, but also his spelling abilities and the form in which he wrote numbers on checks.

Thus, to the extent that *Pheaster* does not take into account the timing of the defendant's Fifth Amendment objection, it is distinguishable and this Court is free to follow the analysis of *Campbell, Wade*, *Matos* and *Kallstrom*.

**B.      This Court Should Deny the Government's Proposed Procedure for Obtaining the Exemplar Under its Inherent Authority to Control and Supervise its Own Proceedings.**

The district court has the inherent authority to control and supervise its own proceedings to promote the proper administration of justice. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 766 (1980) (the inherent powers of the federal courts are those that "are necessary to the exercise of all others," quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812), and noting that "[t]he power of a court over members of its bar is at least as great as its authority over litigants.") (cited with approval in *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 647 (9th Cir. 1997) (held court may sanction counsel pursuant to inherent powers upon finding of bad faith); *see also United States v. Carrigan*, 804 F.2d 599, 603-604 (10th Cir. 1986) (permitted defense counsel to depose prospective prosecution witness under auspices of its inherent power to control and supervise its own proceedings to assure fair procedures and fair trial in case in which government had improperly discouraged the witness from communicating with defense.) "The ultimate responsibility for the effective working of the adversary system rests with the judge." Advisory Committee Notes, Fed. R. Crim. P. 611 (district court has statutory authority to control the mode and order of interrogating witnesses and presentation of evidence to ascertain truth, to "avoid needless consumption of time," and to "protect witnesses from harassment or undue embarrassment").

Ordering a handwriting exemplar without limitation is a back door attempt to

compel Mr. Ranes to provide a spelling and language test in addition to a handwriting exemplar. Oral dictation without spelling out the letters of the words is not necessary to reliable analysis. In fact, the *Pheaster* case describes the oral dictation without spelling method as "unorthodox" and noted that the FBI agent testified that the "normal practice for obtaining such exemplars is to have the suspect copy from materials placed before him." 544 F.2d 371.[1] This is the method the defendant initially proposes be followed in taking Mr. Ranes's exemplar.

Under this Court's inherent authority to ensure procedural fairness, it should limit the government's request for handwriting exemplars to its stated purpose, comparing penmanship, and not allowing the government to abuse the process by forcing Mr. Ranes into a simultaneous spelling test.

### C. Admissibility of Results at Trial

By not opposing the taking of a handwriting exemplar, the defendant does not concede its admissibility at trial. At least two federal district courts exercising their "gate-keeping function" under FRE 702, have severely limited the admissibility of handwriting expert testimony. *See United States v. Hines*, 55 F. Supp. 2d 62, 67-71 (D. Mass. 1999) (relying *Unite States v. McVeigh*, (D. Colo. Trans.)); *United States v. Santillan*, __ F. Supp. 2d __, 1999 WL 10201765 (N.D. Cal. 1999). In *Hines*, the district

---

[1] While the "unorthodox" dictation method utilized in *Pheaster* may now have become a common FBI investigative technique to surreptitiously obtain spelling information in addition to penmanship, it is clearly not necessary for the handwriting expert to make a reliable analysis of the penmanship.

court concluded that the reliability of expert testimony on handwriting suffers because (1) it has never been subject to meaningful reliability or validity testing and (2) there is no peer review by an unbiased community of practitioners and academics.  55 F. Supp. 2d at 68.  The analysis of an "expert" may be no better than that of a lay person--"[t]his is not rocket science, or higher math."  55 F. Supp. 2d at 70.

DATED this 5th day of September, 2007.

/s/ Michael Filipovic
MICHAEL FILIPOVIC
WSBA No. 12319
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Michael_Filipovic@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2007, I electronically filed the foregoing DEFENDANT RANES'S RESPONSE TO GOVERNMENT'S REQUEST FOR MR. RANES'S HANDWRITING EXEMPLAR with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Frank V. Russo and Thomas C. Bradley, Assistant United States Attorneys, Federal Building & U.S. Courthouse, 222 West 7th Avenue, #9, Room 253, Anchorage, Alaska 99513.

/s/ Michael Filipovic
MICHAEL FILIPOVIC
WSBA No. 12319
First Assistant Federal Public Defender
Attorney for Thomas P. Ranes
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Michael_Filipovic@fd.org