ALLEN R. BENTLEY
LAW OFFICES OF ALLEN R. BENTLEY
1111 Third Avenue
Suite 2220
Seattle, WA 98101
Tel.: (206) 343-9391
Fax: (206) 682-3746
Email: abentley@concentric.net
Attorney for Thomas P. Ranes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:06-cr-00041-RRB-JDR |
| | ) | |
| v. | ) | DECLARATION OF THOMAS P. RANES |
| | ) | IN FURTHER SUPPORT OF HIS |
| THOMAS P. RANES, | ) | MOTION FOR LEAVE TO WITHDRAW |
| | ) | HIS GUILTY PLEA |
| Defendant. | ) | |
| _____ | ) | |

STATE OF WASHINGTON    )
                       )  ss.:
COUNTY OF KING         )

I, THOMAS P. RANES, being duly sworn, depose and say:

1. I am the defendant in this case. I submit this declaration in further support of the

motion I have filed [CR 754] for leave to withdraw my guilty plea.

2. On February 8, 2008, I entered pleas of guilty to Counts 1, 119 and 137 in the second

superseding indictment.

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR

3.  My sentencing was originally scheduled to occur on April 24, 2008, but it was subsequently continued.  My sentencing is now scheduled for June 4, 2008.

4.  After fully discussing this matter with my attorney, Allen R. Bentley, and in full recognition of the fact that if this motion is granted I will be tried on the charges contained in the second superseding indictment or on additional charges and could, if convicted on the currently-pending or future charges, be sentenced to a mandatory minimum term of 40 years' incarceration and/or life imprisonment, I am asking the court to permit me to withdraw my guilty plea and to set the case for a jury trial.  My reasons are as follows.

5.  My decision to plead guilty was influenced, in part, by the overall context of my case, in which I was told that if I did not enter a plea of guilty additional charges could be filed against me.  I was so informed through statements by Mr. Bentley, who told me about statements made to him by the prosecutor.  These statements were to the effect that if I chose to go to trial, the government would return to the grand jury and present a superseding indictment.  I was told that I could be charged with aiding and abetting another in using and carrying a "silencer" during and in relation to the marijuana conspiracy charged in Count 1, an offense under 18 U.S.C. §924(c)(1)(B)(ii).  The §924(c)(1)(B)(ii) offense would carry a mandatory 30-year sentence, which the court would be legally required to run consecutively to any sentence imposed on Count 1.  Count 1 carries a 10-year mandatory minimum sentence, upon conviction.  Thus the total (if I were to be convicted on Count 1 and the possible "silencer" count) would have been a mandatory minimum sentence of 40 years.  I was also told that the superseding indictment would include charges that I was responsible for the murder of Thomas Cody.  (If a murder is committed in the

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                    2

course of a firearms offense that can be prosecuted under 18 U.S.C. §924(c), the murder is a federal offense under 18 U.S.C. §924(j).) This charge would carry a possible life sentence.

6. Between September 2007, when Mr. Bentley was appointed to represent me, and late January, 2008, I was incarcerated at the Federal Detention Center, Sea-Tac, Washington. However, on or about January 31, 2008, I was moved from the Federal Detention Center at Sea-Tac to the Cook Inlet Correctional Facility in Anchorage. Neither I nor (as far as I know) my attorney expected that I would be moved at that time. I had not made a decision to plead guilty at the time when I was moved. Indeed, on January 28th my attorney had arranged for the two of us to participate telephonically in a status hearing that was scheduled before Magistrate Judge Roberts on Tuesday, February 5, 2008 [see CR 701], in anticipation of our both remaining in the Seattle area at the time of the status hearing. (After I was moved to Anchorage, however, the status conference was rescheduled for later in the week of February 4th.)

7. Upon learning that I had been moved to Anchorage, Mr. Bentley arranged to travel to Anchorage on Wednesday, February 6th so that he could confer with me and attend the status hearing in person.

8. During the early part of the week of February 4th, I did further research into my case, using the law library at the Cook Inlet facility. I found reports of firearms cases in which charges were based on the defendant's possession of a silencer. I prepared handwritten notes on those cases. When my attorney came to see me at the Cook Inlet Correctional Facility in the evening on Wednesday, February 6th, I gave him my notes and asked him to check on the cases. I told

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                        3

him that I thought that the law required the prosecution to test the alleged silencer and to measure, in decibels, its effectiveness in reducing the sound of a firearm.

9.   While in Anchorage, Mr. Bentley engaged in further plea negotiations.  Thereafter, Mr. Bentley and his investigator, Joe Austin, came to see me again at the Cook Inlet Correctional Facility on Thursday, February 7th.  As far as I know, Mr. Bentley had not conducted any legal research into the "silencer" issue at that time.  I told Mr. Bentley that I would plead guilty.

10.   My guilty plea was scheduled for the next day, Friday, February 8th, at 8:30 a.m.  I made a plea of guilty at that time.  Mr. Bentley had still not reported to me on any legal research into the "silencer" issue at that time.

11.   Several weeks after my plea of guilty, I learned from Mr. Bentley that in every reported case in which the government has sought to attach criminal responsibility for the possession of a silencer, the actual "silencer" device has been available and has been tested by a government expert.  These tests generally involved comparing the report issuing, when a "silenced" weapon is fired, with the report issuing, when an "unsilenced" weapon is fired.  These tests have permitted government expert witnesses to opine that the device in question met the legal definition of "silencer."  The tests showed that silencing device measurably reduced the report, often by 10 decibels or more.

12.   As noted, I was told that if I chose to go to trial, I would face "silencer" charges under §924(c)(1)(B)(ii).  These charges were to be based on allegations that Dennis Shine used the Ranes and Shine shop to fabricate a homemade "silencer" and that he used a weapon, to

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                               4

which the "silencer" was affixed, to kill Thomas Cody. Neither the alleged murder weapon nor the alleged silencer has been found.

13. I recognize that the cases my attorney located after my plea do not hold that expert testing of a "silencer" is legally necessary, before the government can proceed with a case in which the unlawful possession of a silencer is alleged. However, the cases show that the government has consistently relied on expert testimony to prove the charges in such cases. Had my attorney been able to confirm this prior to February 8th, I would have realized that my risk of being charged and convicted and sentenced to a mandatory, consecutive, 30-year sentence under 18 U.S.C. §924(c)(1)(B)(ii) was substantially less than I thought at the time. I submit that this development provides a basis for concluding that it would be "fair and just" to permit me to withdraw my plea.

14. My second basis for seeking to withdraw my plea relates to a statement that Assistant United States Attorney Bradley made at the time of my plea. As I recall (and my attorney has requested the preparation of the transcript in order to verify this claim), Mr. Bradley told the court that I had knowledge of or involvement in an effort that Thomas Cody made to murder another individual who was seeking to set up a marijuana smuggling operation in Anchorage that would have competed with Mr. Cody's operation. I asked for a pause in the proceedings at this point in order to discuss the matter with Mr. Bentley. I believe that Mr. Bradley's statement misled the court into thinking that I had played a part in Mr. Cody's earlier murder plot, whereas in fact I did not learn of that plot until long after the murder attempt had been made and Mr. Cody's intended victim had been shot. I submit that the inaccurate statement made at the time of

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                    5

my plea may also provide a basis for concluding that it would be "fair and just" to permit me to withdraw my plea.

15. I am making this motion before sentencing. I am not aware of anything to suggest that the government has changed its position to its detriment, in reliance on my guilty plea. Most of the co-conspirator witnesses on whom the government apparently intends to rely at trial remain in custody or released under court supervision, with their sentencings to follow mine.

16. For all the foregoing reasons, I request that I be given the oppostunity to withdraw my guilty plea.

DATED this __7th__ day of May, 2008.

THOMAS P. RANES

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                    6

CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2008, I electronically filed the foregoing Declaration of

Thomas Ranes in Further Support of his Motion for Leave to Withdraw his Guilty Plea with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

attorneys for the United States of America, Assistant United States Attorneys Frank Russo and

Thomas Bradley.


By: /s/ Allen R. Bentley
    ALLEN R. BENTLEY
    WSBA No. 12275
    Law Offices of Allen R. Bentley
    1111 Third Avenue
    Seattle, WA  98101
    Telephone: (206) 343-9391
    Fax: (206) 682-3746
    Email:  abentley@concentric.net