ALLEN R. BENTLEY
LAW OFFICES OF ALLEN R. BENTLEY
1111 Third Avenue
Suite 2220
Seattle, WA 98101
Tel.: (206) 343-9391
Fax: (206) 682-3746
Email: abentley@concentric.net
Attorney for Thomas P. Ranes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:06-cr-00041-RRB-JDR |
| | ) | |
| v. | ) | DECLARATION IN SUPPORT OF |
| | ) | DEFENDANT RANES'S MOTION FOR A |
| THOMAS P. RANES, | ) | THE APPOINTMENT OF SPECIAL |
| | ) | COUNSEL |
| Defendant. | ) | |
| | ) | |

STATE OF WASHINGTON   )
                      ) ss.:
COUNTY OF KING        )

  I, ALLEN R. BENTLEY, hereby declare under the penalties of perjury that the following statements are true:

  1. I am the attorney for the defendant in this case. I am fully familiar with the facts set forth herein. I submit this declaration in support of the defendant's motion for the appointment

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR

of special counsel to represent him in connection with his pending motion for leave to withdraw his guilty plea.

    2. Mr. Ranes wishes to withdraw his guilty plea and have his day in court. The government argues [CR 778] that Mr. Ranes must present a "fair and just" basis before he will be permitted to withdraw his plea. It is my obligation to assist Mr. Ranes in presenting all possible facts and arguments that would constitute fair and just reasons, on which an order permitting withdrawal could be premised.

    3. I do not believe that my representation of Mr. Ranes, during the days and weeks leading to his February decision to plead guilty, was constitutionally deficient. Mr. Ranes has not expressed the view that my representation was constitutionally deficient. However, it is in the very nature of Mr. Ranes's claim that it casts a spotlight toward his counsel's performance.

    4. Mr. Ranes was facing an indictment in Alaska, but while awaiting trial, he was housed in a detention facility in Seattle. While Mr. Ranes was housed in Seattle, he and I were able to confer frequently. I had good access to legal resource material.

    5. At the end of January, 2008, Mr. Ranes was transported to Alaska. I followed him there. At the time I flew to Anchorage, on February 6th, I did not anticipate that Mr. Ranes would plead guilty two days later. I was going to Anchorage for a scheduled status hearing, in which Mr. Ranes and I had originally planned to participate telephonically.

    6. When he arrived in Anchorage, on or after February 1st, Mr. Ranes utilized a law library in the correctional facility where he was housed and discovered cases relating to charges, involving possession of a silencer, that he felt would be pertinent to his defense if he were

charged with possession of a silencer during and in relation to the marijuana conspiracy charged in Count 1, as he had been told he would be if he did not plea guilty.

      7. Mr. Ranes told me about these cases when I met with him at the jail in Anchorage on February 6th (which was only a few hours after my arrival in Anchorage), but he was not able to give me the official citations for any of them. Mr. Ranes gave me citations for three cases (which, as noted later in paragraph "8," were not germane). I made no effort to check the cases at the time, because on February 6th I still did not anticipate that Mr. Ranes would be entering a guilty plea. As I recall, I expected that we would simply be participating in a status hearing and that I would be returning to my office in Seattle with ample time to research the matter there.

      8. After learning that Mr. Ranes intended to plead guilty, I realized that research into the matters he had raised with me was potentially more important than it had initially appeared. I felt that if the cases were such as would materially impact Mr. Ranes's decision to plead guilty, I should find them and inform him of that fact. Rather than seeking access to Westlaw or Lexis, however, I asked the government for assistance in locating the three cases that Mr. Ranes had cited, for which he had given me official citations. The government graciously assisted by promptly providing me with the three cases that I had requested. As I recall, I received them in the late afternoon on February 7th. I read them and found that they were not pertinent. I did not conduct further research because (a) I did not have access to Westlaw or Lexis, and (b) further research did not appear indicated given the fact that earlier that day Mr. Ranes had decided to plead guilty.

9. It was only after returning to Seattle that I utilized Westlaw to search out the cases in which decibel testing of the alleged "silencer" devices had been conducted. I regret that I did not find a more thorough way while in Anchorage to research the silencer issue raised by Mr. Ranes and in so doing, or in failing to do, I have contributed to this issue. I should have fully researched and resolved the issue prior to the offer of the guilty plea.

10. After the guilty plea, I did not have much contact – and indeed, had no direct contact – with Mr. Ranes until, as I recall, early April. The reason is that Mr. Ranes remained in Alaska after his guilty plea. When I informed Mr. Ranes that the decibel-testing cases existed, he came to a different assessment of the risks of continuing to litigate.[1]

11. All of the foregoing matters are worthy of consideration at an evidentiary hearing. I would very likely be a witness at such a hearing. However, it would be inappropriate for me to be a witness and an advocate in the same proceeding.

12. I am not seeking permission to withdraw as Mr. Ranes's attorney. I believe we have a good relationship, and I have invested a significant amount of time and effort in becoming familiar with the facts of his case. If the court were to grant Mr. Ranes's motion to withdraw his plea, I would be happy to represent him at the trial. However, the litigation of this limited issue – are there "fair and just reasons" for withdrawal of the plea? – places me in a difficult position.

---

[1] In addition, Mr. Ranes seeks to withdraw his plea on the basis of statements made by the government at the time of his plea, in which the government, as Mr. Ranes heard it, represented to the court that he was aware at the time of the plot by Thomas Cody to have Mickey Keith assaulted and killed. It is Mr. Ranes's position that he did not learn of the violence toward Mickey Keith until significantly after it had occurred. Litigation of this issue may well require me to divulge what was said when Mr. Ranes turned to me for advice during the plea colloquy.

13. We request the appointment of special counsel, that is, an independent counsel who can advise Mr. Ranes as to the sufficiency of the colloquy under Rule 11, the sufficiency of my representation, and other possible bases for withdrawal of the plea, and who could represent Mr. Ranes in any evidentiary hearing that may be held in connection with the motion for withdrawal of the plea. Appointment of a second attorney is authorized under Guide to Judiciary Policies and Procedures, Chapter II, Part B ("Appointment of Counsel"), §2.11, which provides:

> 2. With appointment. In an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney, each attorney is eligible to receive the maximum compensation allowable under the Act. The finding of the court that the appointment of an additional attorney in a difficult case was necessary and in the interest of justice shall appear on the Order of Appointment. (See paragraph 6.01A for appointment of more than one attorney in capital cases.)

14. Finally, I would emphasize that this second attorney would be appointed for the limited purpose of representing Mr. Ranes in connection with the motion to withdraw the guilty plea. When that motion has been resolved, this attorney's role in the case would end.

DATED this  21st  day of May, 2008.

/s/ Allen R. Bentley
ALLEN R. BENTLEY

CERTIFICATE OF SERVICE

      I hereby certify that on May 21, 2008, I electronically filed the foregoing Declaration in Support of Defendant Ranes's Motion for the Appointment of Special Counsel with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys for the United States of America, Assistant United States Attorneys Frank Russo and Thomas Bradley.

      By: /s/ Allen R. Bentley  
      ALLEN R. BENTLEY  
      WSBA No. 12275  
      Law Offices of Allen R. Bentley  
      1111 Third Avenue  
      Seattle, WA  98101  
      Telephone: (206) 343-9391  
      Fax: (206) 682-3746  
      Email: abentley@concentric.net