ALLEN R. BENTLEY
LAW OFFICES OF ALLEN R. BENTLEY
1111 Third Avenue
Suite 2220
Seattle, WA 98101
Tel.:  (206) 343-9391
Fax: (206) 682-3746
Email: abentley@concentric.net
Attorney for Thomas P. Ranes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | NO.  3:06-cr-00041-RRB-JDR |
| Plaintiff, ) | |
| ) | SUPPLEMENTAL MEMORANDUM OF |
| v. ) | LAW IN SUPPORT OF DEFENDANT |
| ) | RANES'S MOTION FOR LEAVE TO |
| THOMAS P. RANES, ) | WITHDRAW HIS GUILTY PLEA AND |
| ) | REQUEST FOR EVIDENTIARY |
| Defendant. ) | HEARING ON THE MOTION |
| ) | |

## I.

## INTRODUCTION

This memorandum is submitted in further support of the motion of defendant Thomas P.

Ranes seeking an order permitting him to withdraw his guilty plea and setting the case for trial.

In addition, as stated in a motion filed on May 21, 2008 [CR 794], we request the appointment of

special counsel under the Criminal Justice Act to represent Mr. Ranes on this motion, in light of

the fact that litigation of the motion will require defense counsel to testify if a hearing is held. *Cf.*

*United States v. Chong*, 167 F. Supp.2d 1160, 1162 (D. Hawaii 2001) ("Chong requested the

appointment of new counsel for the purpose of arguing the withdrawal motion," and new counsel was appointed for the limited purpose of representing Chong in his motion to withdraw the plea).

Finally, we request an evidentiary hearing on the motion. The cases show that conducting an evidentiary hearing is an appropriate mechanism for deciding a motion to withdraw a guilty plea. *See United States v. Hyde*, 520 U.S. 670, 672 (1997) ("After holding an evidentiary hearing," district court denied motion); *United States v. Jones*, 472 F.3d 1136, 1139 (9th Cir. 2007) ("A hearing on the motion to withdraw was scheduled for January 6, 2006"); *United States v. Chong*, 167 F. Supp.2d 1160, 1162 (D. Hawaii 2001) (referring to hearing on Chong's motion to withdraw his guilty plea).

## II.

### THE LEGAL FRAMEWORK

Mr. Ranes has previously filed a notice of his withdrawal of his guilty plea [CR 755], a motion for leave to withdraw the plea [CR 754], and a supporting memorandum of law [CR 757]. These pleadings did not delve into the reasons for which withdrawal of the plea should be permitted because it was our understanding that the plea may not have been accepted at that time, and thus, a reason was not required. *See* Fed. R. Crim. P., Rule 11(d)(1). After the filing of the notice and motion, Assistant United States Attorney Bradley informed defense counsel that in listening to the tape of the guilty plea proceedings, he heard the court state that it had accepted the plea. Furthermore, on May 5, 2008, the court issued an amended minute entry [CR 757], which added the following verbiage to the minute entry for February 8, 2008: "Court accepted

pleas and referred to PO for presentence report."  Finally, the transcript of the plea contains the following statement [Reporter's Transcript, CR 773, page 33]:

> THE COURT:        Based thereon, I'm going to accept your guilty pleas, okay?
>
> MR. RANES:        Yes, sir.

We therefore agree with the government [Government's Opposition to Motion to Withdraw Plea, CR 778, p. 9] that it is incumbent on the defense to present "fair and just" reasons for seeking leave to withdraw the plea.  *United States v. Hyde*, 520 U.S. 670 (1997).

*United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005)*,* is the leading Ninth Circuit case on the issue of what constitutes a "fair and just" reason to permit the withdrawal of a guilty plea. In *Garcia*, the defendant entered a guilty plea to methamphetamine manufacturing charges.  Five months later, but before sentencing, Garcia sought leave to withdraw the plea.  His motion was initially based on an intervening Ninth Circuit decision casting doubt on whether or not he would qualify for sentencing as a career offender.  He then supplemented the motion with a declaration from a newly-discovered witness, which the defense asserted was exculpatory.  The district court denied the motion to withdraw the plea, noting that Garcia had not asserted his innocence and had not claimed that there was any defect in the plea proceedings.  The Ninth Circuit held that the court had taken too narrow a view of Rule 11's requirements.  Quoting *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004), the court held that "fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, *intervening circumstances*, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." 401 F.3d at 1011 (emphasis added). While an assertion that the plea was not

voluntary might be a significant factor weighing in favor of permitting withdrawal, the converse was not true:  the absence of such an assertion does not preclude a finding that "fair and just" reasons for permitting withdrawal exist.  Furthermore, *Garcia* makes it clear that a defendant need not claim innocence in order to prevail on a motion for leave to withdraw his plea.  The *Garcia* court stated: "Though many legitimate reasons for withdrawal relate to a defendant's legal or factual innocence, some defendants may have valid reasons for withdrawal that have nothing to do with innocence." 401 F.3d at 1013.  Thus, the district court's denial of the motion to withdraw the plea – based on the fact that Garcia relied on new evidence and had not asserted his factual innocence – was an abuse of discretion.

   *Garcia* makes it clear that the "fair and just" requirement is to be liberally construed.  Certainly, the bar that a defendant must leap when he seeks to withdraw his guilty plea is lower, when he seeks to withdraw his plea before sentencing, than it is after sentence has been imposed.  However, we recognize that withdrawal of the plea is not solely at the defendant's option.  "Fair and just" reasons must be presented.

## III.

## DISCUSSION

### A.  "Fair and Just" Reasons Are Present.

   The declaration of Mr. Ranes [CR 760] and the declaration of his counsel [CR 761], both filed on May 8, 2008, and the declarations of defense counsel filed on May 21, 2008 in support of the motion for a continuance of sentencing [CR 793] and in support of the motion for the

appointment of special counsel [CR 795], when considered in the context of the entire record of this matter, demonstrate that fair and just reasons for the withdrawal of the plea are present.

Mr. Ranes was facing an indictment in Alaska, but while awaiting trial he was housed in a detention facility in Seattle. While Mr. Ranes was housed in Seattle, he had excellent access to his Seattle-based attorney, and his attorney had good access to legal resource material. At the end of January, 2008, Mr. Ranes was unexpectedly transported to Alaska. His attorney came to Alaska so that he could be present with Mr. Ranes in court at the scheduled status conference. At that point, trial was still set for April 14, 2008 – months away.

Upon arrival in Alaska and utilizing a law library within the Anchorage detention facility, Mr. Ranes discovered cases relating to charges, involving possession of a silencer, that he felt would be pertinent to his defense if he were charged with possession of a silencer during and in relation to the marijuana conspiracy charged in Count 1, as he had been told he would be if he did not plea guilty. These cases involved expert testimony concerning the effect of an alleged silencing device. Mr. Ranes told his counsel about these cases when his counsel came to confer with him upon arriving in Anchorage on February 6th, but Mr. Ranes was not able to provide official citations for any of the "expert testimony" cases. Mr. Ranes gave his counsel citations for three cases (which, however, were soon determined to be not germane). Mr. Ranes's counsel made efforts to check the cases to the best of his limited ability at the time. The government graciously assisted by providing counsel with the three cases that counsel had requested, and counsel reviewed those cases prior to the entry of the guilty plea. However, it was only after

returning to Seattle that counsel utilized Westlaw to search out the cases in which expert decibel testing of the alleged "silencer" devices had been conducted.[1]

Mr. Ranes remained in Alaska for six to eight weeks after his guilty plea. When Mr. Ranes was returned to Seattle, his counsel informed him of the decibel-testing cases. When Mr. Ranes was informed of his counsel's research in this area, he re-assessed the risks of continuing to litigate, decided that he should not have entered his guilty plea, and instructed his counsel to take legal action to seek the withdrawal of the guilty plea.[2]

A 30-year sentence, as called for by Mr. Ranes's plea agreement, is significantly longer than the sentence imposed, or to be imposed, on any of the other defendants in this case. The reason for such a long sentence is, we submit, contained in Part D of the Plea Agreement (pp. 9-10). In that section, the government presents allegations concerning Mr. Ranes's alleged participation in a scheme with Dennis Shine to kill Thomas Cody, which allegedly led to Cody's death.

---

[1] Defense counsel regrets that he did not find a more thorough way to research the "expert testimony" issue raised by Mr. Ranes and in so doing, or in failing to do so, has contributed to this issue. Counsel should have fully researched and resolved the issue prior to the offer of the guilty plea.

[2] In addition, Mr. Ranes seeks to withdraw his plea on the basis of statements made by the government at the time of his plea, in which the government said [Transcript of Guilty Plea, CR 773, p. 27]: "Tom Cody became unhappy about another member of the conspiracy who was going out on his own and arranged for another member of the conspiracy to shoot the other individual over in Bootlegger Cove, approximately five times. *Tom Ranes was aware of that.*" The government's statement could reasonably be construed as an assertion that Mr. Ranes knew, at the time of the assault, of Cody's violent proclivities. It is Mr. Ranes's position – and the government does not disagree, see Government's Opposition to Motion to Withdraw Plea, CR 778, p. 13 – that Mr. Ranes did not learn about the violence toward Mickey Keith, who was the "other individual," until long after it occurred.

Although a defendant need not assert innocence in order to have a "fair and just" reason for withdrawal of his plea, Mr. Ranes *does* assert that he is innocent of the allegation in Part D that he knew in advance that Dennis Shine was going to shoot Cody.

**B.  The Motion Was Made Reasonably Promptly**.

The government argues that one factor weighing in favor of denial of Mr. Ranes's motion is that he delayed filing it until April 30, 2008, nearly three months after the guilty plea [Government's Opposition to Motion to Withdraw Plea, CR 778, p. 15].  The argument ignores the practical problems Mr. Ranes and his counsel faced in communicating after the plea.  Mr. Ranes's counsel returned to Seattle on a flight on the evening of February 8th.  By contrast, Mr. Ranes remained in Anchorage and was not returned to the detention center in Seattle until late March.  Mr. Ranes and his counsel conferred in person upon his return to Seattle, and it was soon after that that Mr. Ranes instructed counsel to take action in efforts to withdraw the plea. Defense counsel emailed the government on April 18, 2008 to inform them of Mr. Ranes's desire.  The first withdrawal pleadings were filed with the court in due course thereafter.[3]

**C.  The Government Would Not Be Significantly Prejudiced by Granting the Motion.**

The government argues that it detrimentally relied on Mr. Ranes's plea.  The government reports that resources have been allocated elsewhere and there are co-defendants who are about

---

[3]  Under the rules, the draft presentence report was to be provided to the attorneys by not later than April 30, 2008.  The motion to withdraw the plea was filed on April 30, 2008, prior to defense counsel's receipt of the draft presentence report.  Thus, it cannot be said that the motion to withdraw the plea resulted from dissatisfaction with the draft presentence report.

*United States v. Thomas P. Ranes, et al.*
3:06-cr-00041-RRB-JDR                7

to be sentenced, "after patiently waiting for the defendant to resolve his case" [Government's Opposition to Motion to Withdraw Plea, CR 778, p. 15].

The government's reasons are unpersuasive. The defense, too, has allocated resources elsewhere. If the motion is granted, we will pick up trial preparation where we left off, and so can the government. We would support a reasonable continuance so that the government is not caught short. As for the government's witnesses, whether they are sentenced now or in a few months is of no moment. All of them are either in custody or on bond – they are effectively under the control of the government, and they are not being prejudiced by the passage of time. There is no claim that any of them would not be available for trial and as able to testify at the trial as they would have been had trial been held on April 14th, the last scheduled trial date. *Compare United States v. Chong*, 167 F. Supp.2d 1160, 1172 (D. Hawaii 2001) (key government witness was homeless and could not be located; other percipient witnesses "are methamphetamine users whose memories and recall would be adversely affected" by the delay attributable to the withdrawn guilty plea).

Finally, we would note one other important respect in which this case is unlike many of those in which a defendant seeks to withdraw his plea, the withdrawal is denied, and the denial is held to be proper. Unlike the defendants in such cases as *United States v. Hyde*, 520 U.S. 670, 671 (1997) ("On the morning of his trial, respondent indicated his desire to enter plea negotiations"); *United States v. Chong*, 167 F. Supp.2d 1160, 1172 (D. Hawaii 2001) ("Chong pled guilty just before his scheduled trial date," and 500 potential jurors had been summoned), Mr. Ranes did not tender his guilty plea on the eve of trial. Mr. Ranes entered his plea more than

two months before the trial date.  Thus granting the motion would not place the government in the position of having to prepare for trial twice.

## IV.

## CONCLUSION

For all the foregoing reasons, as well as for the reasons set forth in prior pleadings, the court should (a) appoint special counsel to conduct further litigation of the motion to withdraw the guilty plea, (b) schedule this matter for an evidentiary hearing, and (c) based on the matters to be presented at the evidentiary hearing, set aside Mr. Ranes's guilty plea and schedule the case for a jury trial.

DATED this _22nd_ day of May, 2008.

Respectfully submitted,

LAW OFFICES OF
ALLEN R. BENTLEY


By: /s/ Allen R. Bentley_____
    ALLEN R. BENTLEY
    WSBA No. 12275
    Law Offices of Allen R. Bentley
    1111 Third Avenue
    Seattle, WA  98101
    Telephone: (206) 343-9391
    Fax: (206) 682-3746
    Email:  abentley@concentric.net

CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2008, I electronically filed the foregoing Supplemental

Memorandum of Law in Support of Defendant Ranes's Motion to for Leave to Withdraw Guilty

Plea and Request for Evidentiary Hearing on the Motion with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to the attorneys for the United States

of America, Assistant United States Attorneys Frank Russo and Thomas Bradley.


By: /s/ Allen R. Bentley
    ALLEN R. BENTLEY
    WSBA No. 12275
    Law Offices of Allen R. Bentley
    1111 Third Avenue
    Seattle, WA  98101
    Telephone: (206) 343-9391
    Fax: (206) 682-3746
    Email:  abentley@concentric.net