IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

THOMAS P. RANES,

               Defendant.

Case No. 3:06-cr-00041-JMK-1

**ORDER GRANTING RENEWED MOTION FOR COMPASSIONATE RELEASE**

## I.  INTRODUCTION

Before the Court at Docket 1150 is Defendant Thomas P. Ranes's "Renewed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (the "Motion"). Mr. Ranes contends that his medical condition, when coupled with the COVID-19 pandemic and lack of appropriate medical treatment, present extraordinary and compelling circumstances that justify a reduction in sentence.[1] Mr. Ranes asks the Court to reduce his 360-month sentence to time served and suggests an expanded term of supervised release equal to the sentence being abrogated, with the initial portion to be served on home confinement.[2]

---

[1] Docket 1150 at 2–3.
[2] *Id*. at 3.

The Government denies that Mr. Ranes's condition presents extraordinary and compelling circumstances, and further contends that release is inappropriate under the sentences factors in 18 U.S.C. § 3553(a).[3] The U.S. Probation Officer who completed the Compassionate Release Investigation in this case recommended that the Motion be denied "[b]ased on the nature and seriousness of the offense, and the need to deter the defendant and protect the public."[4] For the reasons below, the Court respectfully disagrees.

## II.   BACKGROUND

On June 4, 2008, Mr. Ranes was sentenced to 360 months incarceration for Conspiracy to Import Controlled Substances, Money Laundering, and International Money Laundering.[5] He currently is in BOP custody, with a release date of June 4, 2031.[6] With Mr. Ranes's recidivism score, he expects to be released to home confinement by October 2030, approximately 95 months from the date of this Order.[7]

Mr. Ranes previously petitioned this Court for compassionate release on July 21, 2020, which the Court denied on September 22, 2020.[8] This Court did not reach whether Mr. Ranes articulated compelling and extraordinary circumstances; rather, it found that the relevant factors under 18 U.S.C. § 3553(a) did not weigh in favor of release.[9] On

---

[3] Docket 1162 at 1–2.
[4] Docket 1156 at 3 (sealed).
[5] Docket 849.
[6] Docket 1164 at 1.
[7] *See id.*; Docket 1150 at 4 (expecting eight months early release to home confinement).
[8] Docket 1149.
[9] *Id.* at 4.

*United States v. Ranes*                                                      Case No. 3:06-cr-00041
Order Granting Compassionate Release                                          Page 2
Case 3:06-cr-00041-JMK   Document 1165   Filed 11/22/22   Page 2 of 12

March 9, 2021, Mr. Ranes submitted a renewed request to the Warden of his facility, which was denied on April 26, 2021.[10] On July 28, 2022, Mr. Ranes filed the present Motion.[11]

### III. LEGAL STANDARD

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to petition the district court for a sentence reduction after exhausting his administrative remedies. After considering the applicable factors set forth in 18 U.S.C. § 3553(a), a court may grant the motion if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."[12] The Sentencing Commission has not yet issued an "applicable" policy statement for 18 U.S.C. § 3582(c) motions filed by a defendant.[13] That said, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion," but they are not binding.[14] U.S.S.G. § 1B1.13 describes "extraordinary and compelling reasons" as including: (1) serious medical conditions that are terminal or permanent and that diminish the ability of the defendant to provide self-care within the correctional facility; (2) the advanced age of the defendant; (3) family circumstances; and (4) other extraordinary and compelling reasons not specifically articulated by the statement.[15]

---

[10] Docket 1150-2 at 2.
[11] Docket 1150.
[12] 18 U.S.C. § 3582(c)(1)(A).
[13] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (finding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant).
[14] *Id.*
[15] U.S.S.G. § 1B1.13, cmt. n.1.

*United States v. Ranes*                                                      Case No. 3:06-cr-00041
Order Granting Compassionate Release                                                          Page 3
Case 3:06-cr-00041-JMK   Document 1165   Filed 11/22/22   Page 3 of 12

# IV. DISCUSSION

As a threshold matter, the Government appears to agree that Mr. Ranes exhausted his administrative remedies and that this matter is ripe for consideration by the Court.[16]

In the two years since the Court's previous Order, several changes have occurred in Mr. Ranes's circumstances, his proposed release plan, and the applicable law. First, Mr. Ranes's health continues to deteriorate, and, troublingly, BOP has yet to provide appropriate medical treatment—even after this Court warned that he has received "alarmingly inadequate medical care" and has "yet to receive necessary surgery."[17] Second, Mr. Ranes's sentence has been reduced under 18 U.S.C. § 3624(b) to a new release date of June 4, 2031, meaning that Mr. Ranes has served over 65 percent of his statutory sentence (not including any early release to home confinement).[18] Third, Mr. Ranes proposes that he remain on home confinement for a term equal to the remainder of his sentence, and the U.S. Probation Officer has assessed Mr. Ranes's brother's home as an appropriate residence if he is released.[19] Last, the Court no longer is bound to the Sentencing Commission's statements in U.S.S.G. § 1B1.13.[20] Acknowledging these changes, the Court considers Mr. Ranes's motion anew.

---

[16] *See* Docket 1162 at 3.
[17] Docket 1149 at 2.
[18] *See* Docket 1156 at 1 (Defendant has been in BOP custody since April 22, 2006, with a release date of June 5, 2032) (sealed); Docket 1164 at 1 (Defendant was issued a new release date of June 4, 2031).
[19] Docket 1156 at 2 (sealed).
[20] *Compare* Docket 1149 at 3 *with United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

The Court first evaluates whether Mr. Ranes presents extraordinary and compelling reasons that justify a sentence reduction, an inquiry that it did not reach on Mr. Ranes's first motion for compassionate release. Discussed below, the Court finds that Defendant has satisfied this burden: the record demonstrates that Mr. Ranes suffers from a serious and likely permanent medical condition that substantially diminishes his ability to provide self-care within the correctional facility; that he is not able to receive appropriate medical treatment or sanitary supplies at the correctional facility; and that his medical condition and environment leave him particularly susceptible to infection from COVID-19.

Mr. Ranes has significant digestive tract issues and diseases of the anus and rectum, for which he has received over twenty surgeries during his incarceration.[21] He has had multiple sections of his large intestine removed due to complications from medical treatment he received while in BOP custody, followed by multiple procedures to implant and then repair medical mesh for an incisional hernia.[22] After using a colostomy bag from 2009 through 2011, Mr. Ranes had multiple surgeries to correct subsequent complications.[23] He cannot defecate without use of an enema,[24] experiences consistent anal leakage and bleeding,[25] has frequent UTIs,[26] and endures chronic abdominal pain and abnormalities, especially with the passage of stool.[27] Unrelatedly, in 2019, Mr. Ranes

---

[21] *See generally* Docket 1152-1 (sealed); *see also* Docket 1156 at 2 (sealed).
[22] Docket 1152-1 at 99–112, 174 (sealed).
[23] *Id.* at 174 (sealed).
[24] *See, e.g., id.* at 2, 6, 110 (sealed).
[25] *See, e.g., id.* at 103, 110, 171 (sealed).
[26] *See, e.g., id.* at 15, 104–05 (sealed).
[27] *See, e.g., id.* at 104, 110–11, 120–23 (sealed).

suffered a herniated disc and a detached disc in his spine.[28]  Mr. Ranes states that this spinal injury has, at times, left him to use a wheelchair.[29]  Nearly three years later, he has yet to receive the necessary surgery for his injury.[30]

Mr. Ranes faces substantial challenges to self-care and his ability to receive appropriate medical treatment.  He must use an enema in a supine position, forcing him to defecate in front of his cellmates in an open-style dormitory.[31]  Mr. Ranes has difficulty obtaining appropriate medical supplies for his condition, such as enema bags, medical gauze, and sanitary wipes.[32]  As a result, Mr. Ranes must re-use enema bags after washing them out with soap and water, and use wet toilet paper to clean himself.  Obviously, this results in irritation, blood, and increased risk of infection.[33]

In isolation, Mr. Ranes's loss of a vital bodily function and diminished ability to care for himself while at a correctional facility could constitute extraordinary and compelling circumstances.[34]  However, it is the confluence of these conditions with the COVID-19 pandemic that undoubtedly warrant release.[35]  Mr. Ranes's condition leaves him weakened, compromised, and likely requiring future surgeries.  Further, Mr. Ranes is

---

[28] *Id.* at 27–28, 70 (sealed).

[29] Docket 1150 at 6.

[30] *Id.* at 34–35; *see also* Docket 1149 at 2.

[31] *See, e.g.,* Docket 1152-1 at 2 (sealed).

[32] *See generally* Docket 1150-3 (requests for medical supplies).

[33] *See* Docket 1150-3 at 8–9, 13; Docket 1152-1 at 40 (sealed).

[34] *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii); *United States v. Alvarado*, No. 16-cr-00940-BAS, 2020 U.S. Dist. LEXIS 159291, at *7 (S.D. Cal. Aug. 31, 2020) (finding that level of chronic care, including change of colostomy bag, renders defendant unable to provide self-care within correctional institution).

[35] *See United States v. Rivas*, No. TDC-19-0417, 2022 U.S. Dist. LEXIS 2396, at *4 (D. Md. Jan. 4, 2022).

at heightened risk of infection due to his rectal disease, which is aggravated by a lack of cleaning supplies and enema bags. While Mr. Ranes has received the Moderna vaccine, he has not received any booster doses.[36] With an ever-evolving virus and waning immunity from both vaccines and infection, the Court is not persuaded by the Government's argument that Mr. Ranes is not vulnerable to COVID-19 because he once recovered from the virus.[37] Taken together, Mr. Ranes's medical condition, his inability to receive appropriate medical treatment and supplies while in BOP custody, and his increased risk of complications from COVID-19 infection present extraordinary and compelling circumstances that justify release.

The Court next considers the applicable sentencing factors set forth in 18 U.S.C. § 3553(a):

> the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims.[38]

The "need for the sentence imposed" may include the need to: reflect the seriousness of the offense; deter future criminal conduct; protect the public from further crimes by the defendant; and provide the defendant with necessary training, medical care, or correctional

---

[36] *See* Docket 1150 at 42; Docket 1152-1 at 91 (sealed).

[37] *See Rivas*, 2022 U.S. Dist. LEXIS 2396, at *5.

[38] *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (summarizing 18 U.S.C. § 3553(a)(1)–(7)).

treatment "in the most effective manner."[39]  Importantly, the Court considers these factors to impose a sentence that is sufficient, but not greater than necessary, to comply with those needs.[40]

The Court previously found that release "would not reflect the seriousness of the offenses" because Mr. Ranes had served less than half of his sentence.[41]  In addition, the Court was "not persuaded that Ranes would not pose a danger to the community if released."[42]  Over two years later, and in light of developments in applicable caselaw, the Court now concludes that the sentencing factors counsel release.

The Court first considers the history and characteristics of Defendant.  Mr. Ranes has no prior criminal history[43] and is classified as minimum-security.[44]  While incarcerated, he has shown a record of rehabilitation, good character, work ethic, and contribution to his community.[45]  Mr. Ranes has completed over 40 rehabilitative and education programs and has excelled in his job assignments.[46]  He has maintained strong family ties while incarcerated.[47]  This factor undoubtedly weighs towards release.

The nature of Mr. Ranes's crime is a more difficult question.  Over sixteen years ago, Mr. Ranes participated in a conspiracy to traffic drugs—mostly marijuana—into

---

[39]  18 U.SC. § 3553(a)(2)(A)–(D).
[40]  18 U.SC. § 3553(a).
[41]  Docket 1149 at 4–5.
[42]  Id. at 5.
[43]  Docket 790-4 at 8 (sealed).
[44]  Docket 1150-8 at 2.
[45]  See generally Docket 1150-8; Docket 1150-9; Docket 1150-10.
[46]  See Docket 1150-7 at 2–3, 7; Docket 1150-9 at 2–9 (letters of support from BOP staff), 10 (certificate of appreciation).
[47]  See Docket 1150-10 at 2–14 (letters of support from family and community members).

Alaska from Canada. In opposing the present Motion, the Government makes much of Mr. Ranes's admission that he is liable under *Pinkerton v. United States* for the murder of Tom Cody.[48] The Presentence Report increased Mr. Ranes's offense by two levels for this specific offense characteristic, namely, possessing a firearm coupled with the admission that "it was foreseeable to me that a firearm would be used in the course of the conspiracy and that a death would result from such use."[49] However, Mr. Ranes consistently has denied any responsibility beyond *Pinkerton* liability, specifically rejecting that he participated in Tom Cody's murder or was involved beyond an awareness that "co-defendant Shine manufactured and tested a silencer for a 9 millimeter Beretta firearm at the Ranes and Shine shop, for the purpose of using the Beretta firearm to kill a co-conspirator."[50] While Mr. Ranes plead guilty to international drug conspiracy and money laundering, he has never been charged—let alone convicted—of a violent crime. For the Government to characterize his offense as a "homicide" is disingenuous, and the Court will not give more weight to this allegation than when Mr. Ranes originally was sentenced.[51] Indeed, the co-defendant who admitted to murdering Tom Cody (and whose sole testimony the Government cites to implicate Mr. Ranes) was sentenced to nearly ten years *less* than Mr. Ranes.[52] The nature of Mr. Ranes's drug trafficking crime certainly is serious, as

---

[48] *See* Docket 1162 at 8.

[49] Docket 790-4 at 5 (presentence report) (sealed); *see also* Docket 849 (adopting presentence report without change).

[50] Docket 719 at 8–9 (plea agreement); *see also* Docket 819 at 2 ("Mr. Ranes denies any involvement in the death of Thomas Cody, a denial that is tacitly embedded in the plea agreement."); Docket 1150 at 50 (denying any participation during sentencing hearing).

[51] *See* Docket 790-4 (outlining offense level and adjustments) (sealed).

[52] Docket 907 (imposing 244 months imprisonment) (sealed).

discussed below, but the Court will not characterize it as a homicide, nor treat Mr. Ranes's co-conspirator's allegations as dispositive to his sentence.

The need for Mr. Ranes's sentence today profoundly differs from that need in 2008. When Mr. Ranes entered prison, he was an able-bodied, 34-year-old man. Now, Mr. Ranes has a severe and likely permanent medical condition that results in chronic pain and diminished control over a vital bodily function. The need to deter future crime has been met; Mr. Ranes understands that he would face significant threat to his health and quality of life if he returned to prison. Recidivism further is unlikely because of his health condition, age, family ties, positive conduct while incarcerated, and low recidivism score.[53] For similar reasons, this Court finds that Mr. Ranes does not pose a serious risk of danger to his community.

While Mr. Ranes does not appear at risk for recidivism, the scale and seriousness of his crime gives the Court pause. Mr. Ranes was a leader of a major conspiracy to traffic drugs into Alaska, which resulted in Tom Cody's death. However, this is one aspect of one sentencing factor, and the Court considers it in context. Mr. Ranes has served over 16 years, or approximately 65 percent, of his statutory sentence.[54] But incarceration caused Mr. Ranes to suffer a serious and traumatic health condition—in this sense, he has undergone a more severe sentence than his time served would reflect. Further, Mr. Ranes already has served an objectively longer sentence than most of his co-

---

[53] Docket 1150-7 at 5 (noting low PATTERN score).
[54] *C.f.* Docket 1149 at 5 (finding that release is inappropriate, in part, because Mr. Ranes had served less than half his sentence).

conspirators.[55]   An expanded term of supervised release and imposition of home confinement will further reflect the severity of his crimes.[56]   Finally, a reduction in sentence with a term of home confinement will "provide the defendant with needed . . . medical care in the most effective manner,"[57] an analysis that has dramatically changed since Mr. Ranes was sentenced in 2008.

After considering the applicable sentencing factors set forth in 18 U.S.C. § 3553, the Court finds that a sentence of time served, coupled with adequate conditions of release, is both sufficient and no greater than necessary to achieve the original goals of Mr. Ranes's sentencing.   The confluence of Mr. Ranes's medical condition, lack of appropriate medical treatment, inability to care for himself while incarcerated, and greater susceptibility to COVID-19 create extraordinary and compelling reasons that warrant Mr. Ranes's compassionate release.

## V.   CONCLUSION

Defendant's Motion for Compassionate Release at Docket 1150 is **GRANTED**.   Mr. Ranes's sentence is reduced to time served, effective **December 14,**

---

[55] *See* Docket 819 at 8; 18 U.S.C. § 3553(a)(6) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); *United States v. Rivas*, No. TDC-19-0417, 2022 U.S. Dist. LEXIS 2396, at *7–8 (D. Md. Jan. 4, 2022) (finding that sentence reduction would not create unwarranted disparities in light of defendant's health challenges and co-defendant's comparatively lower sentence).

[56] *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022) ("Instead, upon granting a sentence reduction, a court 'may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment,' 18 U.S.C. § 3582(c)(1)(A), including a condition of home detention 'as a substitute for imprisonment.' U.S.S.G. § 5F1.2.").

[57] 18 U.S.C. § 3553(a)(2)(D).

**2022.**  The Court imposes a six-year term of supervised release, with the initial two years of that term to be served on the condition of home confinement.  All other terms and conditions of supervised release as outlined in the Court's original judgment shall apply.[58] Defendant shall participate in the home confinement program for a period of 24 months and shall abide by all the assigned components of the program, which will include electronic monitoring or other location verification system.  Specifically, Mr. Ranes is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; Court-ordered obligations; attorney visits and court appearances; or other activities as pre-approved by the probation officer. Defendant shall pay for the cost of electronic monitoring or other location verification system.

**IT IS SO ORDERED** this 22nd day of November, 2022, at Anchorage, Alaska.

_____
*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[58]  Docket 849 at 4–5.